704 So.2d 1046 (1997)
John L. BRITT, Petitioner,
v.
Lawton CHILES, etc., et al., Respondents.
No. 89285.
Supreme Court of Florida.
September 25, 1997.
Rehearing Denied December 18, 1997.
John L. Britt, Orlando, pro se.
Thomas Crapps, Assistant General Counsel, Office of the Governor, Legal Affairs, Tallahassee; and Susan A. Maher, Deputy General Counsel, Department of Corrections, Tallahassee, for Respondent.
OVERTON, Justice.
John L. Britt petitions this Court for a writ of mandamus seeking to prohibit the governor, the attorney general, and the Department of Corrections (the department) from mandatorily requiring that he lose six months of eligibility to earn gain-time for a disciplinary infraction. We have jurisdiction. Art. V, § 3(b)(8), Fla. Const. We find that the United States Supreme Court's decision in Lynce v. Mathis, ___ U.S. ___, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997), mandates that we grant the petition as it applies to the department.
John Britt is serving a seven-year sentence for an aggravated battery he committed on March 9, 1992. In June 1996, he was charged with a disciplinary infraction for the unauthorized use of alcohol or drugs. He received fifteen days' disciplinary confinement, received ninety days' loss of earned gain-time, and was rendered ineligible to earn incentive gain-time for a period of six months after receiving the disciplinary report. The penalty assessed was based on section 944.281, Florida Statutes (1995), which provides that "[t]he department may declare that a prisoner" who violates a law or rule "shall not be eligible to earn incentive gain-time for up to 6 months," and rule 33-11.0065(5)(a)1.-5. of the Florida Administrative Code, which implements section 944.281.
Britt has filed this petition for writ of mandamus seeking to prevent the governor and the department from applying section 944.281 and rule 33-11.0065 to him based on an asserted ex post facto violation because the statute and rule were not in effect at the time he committed his offense.
*1047 At the outset, we deny the petition as it applies to the governor and the attorney general. We conclude that the governor and the attorney general were improperly made parties to this petition given that they have no legal authority to award or forfeit gaintime based on a prisoner's behavior. See Hatten v. State, 561 So.2d 562 (Fla.1990); Heath v. Becktell, 327 So.2d 3 (Fla.1976).
We now address the petition as it pertains to the department. At the time Britt committed his offense, incentive gain time was governed by two statutes pertinent to this petition: (1) sections 944.275(4)(b) and (5), Florida Statutes (1991); and (2) section 944.28(1), Florida Statutes (1991). Under section 944.275(4)(b), Britt could earn up to twenty days per month of incentive gain time for good behavior. Additionally, subsection 944.275(5) provided: "When a prisoner is found guilty of an infraction of the laws of this state or the rules of the department, gain-time may be forfeited according to law." (Emphasis added.) Section 944.28(2)(b) likewise provided:
A prisoner's right to earn gain-time during all or any part of the remainder of the sentence or sentences under which he is imprisoned may be declared forfeited because of the seriousness of a single instance of misconduct or because of the seriousness of an accumulation of instances of misconduct.

(Emphasis added.)
On October 1, 1995, section 944.281 was adopted, effective January 1,1996. That section provides:
The department may declare that a prisoner who commits a violation of any law of the state or rule or regulation of the department or institution on or after January 1, 1996, and who is found guilty pursuant to section 944.28(2), shall not be eligible to earn incentive gain-time for up to 6 months following the month in which the violation occurred. The department shall adopt rules to administer the provisions of this section.
(Emphasis added.)
Pursuant to the directive in section 944.281, the department adopted rule 33.110065(5)(a)1.-5. Under that rule, Britt mandatorily lost eligibility to earn incentive gain-time for six months when he committed the disciplinary infraction. No discretion exists. The department argues that application of the new statute and rule to Britt do not violate the ex post facto clause of the federal or Florida constitutions because they alter penalties associated with in-prison misconduct and relate to penalties that are directed solely to the new conduct. Further, the department contends that, because sanctions for possible future prison misconduct do not constitute a "significant" factor for either the trial judge or defendant with regard to plea bargains or calculation of the sentence imposed, the ex post facto clause is not implicated.
The department's arguments are essentially the same arguments it made recently in Lynce v. Mathis, ___ U.S. ___, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997); that is, that changes relating to future events (in this case future misconduct), do not constitute a "significant factor" for either the trial judge or defendant at the time of sentencing. Rather, the department argues that disciplinary confinement and forfeiture of gain-time or the right to earn gain-time are merely management tools used to control and modify improper behavior. Further, the department argues that section 944.281 is merely a further refinement of section 944.28. Under the United States Supreme Court decision in Lynce, we are compelled to conclude that both of these arguments must fail.
In Lynce, the United States Supreme Court reaffirmed the standard to be used in reviewing a statute for an ex post facto violation. "To fall within the ex post facto prohibition, a law must be retrospectivethat is `it must apply to events occurring before its enactment'and it `must disadvantage the offender affected by it' by altering the definition of criminal conduct or increasing the punishment for the crime." ___ U.S. at ___, 117 S.Ct. at 896 (citations omitted). The statute at issue, section 944.281, changes the method of determining what punishment is to be imposed for a disciplinary infraction during an inmate's confinement by allowing the department to eliminate an inmate's opportunity *1048 to earn incentive gain-time for up to six months following the offense. This is similar to the situation at issue in Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), because "by curtailing the availability of future credits it effectively postpone[s] the date when [an inmate] would become eligible for early release." Lynce, ___ U.S. at ___, 117 S.Ct. at 896. In Weaver, the United States Supreme Court unanimously reversed this Court, finding that the department could not retroactively decrease the amount of gain-time awarded for an inmate's good behavior. As stated in California Department of Corrections v. Morales, 514 U.S. 499, 509, 115 S.Ct. 1597, 1603, 131 L.Ed.2d 588 (1995), a court must determine whether a statute "produces a sufficient risk of increasing the measure of punishment attached to the covered crimes."
Applying these directives to the instant case, we must disagree with the department's contentions. Under the prior statute, eligibility for future credit was potentially subject to revocation; under the current statute and rule, revocation has become mandatory. Consequently, the latter statute works to the disadvantage of the prisoner by potentially lengthening the period that an inmate spends in prison in the face of a disciplinary action. The distinctions in the consequences of the two statutes become clear when the applicable administrative rules are examined.
At the time of Britt's offense, under section 944.28, the department applied rule 33-22.008 to determine whether future eligibility to earn gain-time would be revoked. That rule provided in pertinent part as follows:
(4) Forfeiture of Unearned Gain Time. Recommendations for loss of unearned gain time shall be the exception rather than the rule.

(a) Loss of unearned gain time shall be considered only when the inmate has been involved in a serious assault or general disturbance and the inmate has not accrued enough gain time to achieve the desired corrective results.
(Emphasis added.) Because Britt's disciplinary infraction dealt with drug use, under the old rule, he would not have lost eligibility to earn gain-time. Under rule 33-11.0065(5)(a), which was enacted pursuant to section 944.281, he became ineligible to earn gaintime for six months for that same offense. Thus, under the new statute, a more severe punishment is imposed than under the old. Like the situation in Lynce, the statute at issue disadvantages Britt because it allows the department to lengthen his sentence by increasing the punishment to be applied for disciplinary actions.
Accordingly, for the reasons expressed, we grant Britt's petition, holding that, upon this opinion's becoming final, the department shall be barred from applying section 944.281 and its corresponding administrative rule to Britt and any other inmate convicted of an offense committed prior to October 1, 1995, the date the statute became law. Because we trust that the department will fully comply with the dictates of this opinion, we withhold issuance of the writ.
It is so ordered.
KOGAN, C.J., and SHAW, HARDING and ANSTEAD, JJ., concur.
GRIMES, J., dissents with an opinion, in which WELLS, J., concurs.
GRIMES, Justice, dissenting.
The Court is taking an unnecessary and unwarranted step in concluding that Lynce v. Mathis, ___ U.S. ___, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997), requires Britt's gain time to be reinstated.
The only issue decided in Lynce was that administrative gain time had to be treated the same as incentive gain time for purposes of ex post facto analysis. Thus, the United States Supreme Court held that its prior decision in Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), applied to all types of gain time.
Section 944.281, Florida Statutes (1995), and Department Rule 33.110055(5)(a)1.-5., under consideration in this case, are entirely different. They provide for the cancellation of gain time only if prisoners commit subsequent acts of misconduct. Unlike the circumstances in Lynce, section 944.281 and its corresponding rule do not take away anything to which the prisoner was entitled *1049 when his crime was committed or when he was sentenced to jail. In Lynce, the court pointed out:
As we recognized in Weaver, retroactive alteration of parole or early release provisions, like the retroactive application of provisions that govern initial sentencing, implicates the Ex Post Facto Clause because such credits are "one determinant of petitioner's prison term ... and ... [the petitioner's] effective sentence is altered once this determinant is changed." [Weaver, 450 U.S. at 32, 101 S.Ct. at 966.] We explained in Weaver that the removal of such provisions can constitute an increase in punishment, because a "prisoner's eligibility for reduced imprisonment is a significant factor entering into both the defendant's decision to plea bargain and the judge's calculation of the sentence to be imposed." Ibid.

___ U.S. at ___, 117 S.Ct. at 898. Here, however, the penalties associated with in prison disciplinary action are unrelated to the original crimes and lack any nexus with the penalties imposed for the crimes.
These important concepts were recognized when the California Supreme Court considered a statutory change to California's gaintime statutes that included a change to the forfeiture provisions for misconduct. In re Ramirez, 39 Cal.3d 931, 218 Cal.Rptr. 324, 705 P.2d 897 (1985). Ramirez, who was incarcerated for a crime committed before the effective date of the statutory changes, was charged with altering paperwork related to a television set, resulting in the loss under the new forfeiture scheme of ninety-five days that was later reduced to forty-eight days through administrative appeal. Under the old plan, Ramirez would have been subject to a maximum forfeiture of fifteen days. Citing Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), Ramirez challenged the application of the new scheme of forfeiture penalties based upon the state and federal ex post facto clauses. The court denied Ramirez's claim, reasoning that the sanctions for possible future prison misconduct did not constitute a "significant factor" for either the trial judge or defendant with regard to plea bargains or calculation of the sentence imposed.
In a similar vein, the Fourth Circuit Court, of Appeals rejected an ex post facto challenge to new prison regulations which imposed punishment in the form of gain-time forfeitures for an inmate's refusal to submit to DNA testing authorized by statute. Ewell v. Murray, 11 F.3d 482 (4th Cir.1993). The court observed that:
We might ask if this situation is any different in principle from the situation where prison officials, confronted with increased problems within the prison population of fighting or drug usage, meet the problem with the adoption of additional punishment for prospective violations. The punishment does not add punishment for the original crime for which the inmate was incarcerated. Just as good conduct allowances may be earned by compliance with reasonable prison regulations, they may be lost by subsequent noncomplying conduct. While an inmate has the right, as of the time of his sentence, to expect the good conduct credits then defined for good behavior, he has no right to a particular set of prison regulations adopted to maintain the order, safety, and efficiency of the prison.
Ewell, 11 F.3d at 486.
The rationale of United States v. Reese, 71 F.3d 582 (6th Cir.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 2529, 135 L.Ed.2d 1053 (1996), is also instructive. In Reese, the Sixth Circuit Court of Appeals recognized the critical distinction between laws which change penalties imposed for the original crime as opposed to laws which change penalties for subsequent new misconduct. There, Michael Reese was convicted of conspiracy to distribute cocaine and received thirty-three months of imprisonment and five years of supervised release. However, a new statute was enacted after Reese committed his crime which required that, upon revocation of supervised release, the judge must sentence a violator to not less than one-third of the term of supervised release. Thereafter, Reese began his supervised release which was subsequently revoked when he tested positive for use of cocaine. The judge *1050 sentenced Reese to twenty months, which was the statutory one-third of the original five-year supervision. Reese challenged the new statute on ex post facto grounds, contending that under the prior statute and guidelines, he would have faced only three to nine months of imprisonment. In declining to find an ex post facto violation, the court stated:
[W]e are compelled to hold that Section 3583(g) does not change the legal consequences of the original act by Reese of cocaine distribution. A prisoner sentenced for the same crime on the same day as Reese, who was released on supervised release the same day as Reese, would suffer no additional "legal consequences" as result of the enactment of Section 3583(g), so long as he did not violate the terms of his supervised release. The legal consequences Reese suffered were different, strictly because of acts that he committed long after the enactment of Section 3583(g)....
United States v. Reese, 71 F.3d at 591.
The fact that these cases were decided before Lynce does not detract from their logic because Lynce only held that administrative gain time had to be treated like any other kind of gain time. Moreover, Lynce emphasized that "[t]o fall within the ex post facto prohibition, a law must be retrospectivethat is `it must apply to events occurring before its enactment.'" Lynce, ___ U.S. at ___, 117 S.Ct. at 896. Britt's gain time was only cancelled because of subsequent misconduct which had nothing to do with his original crime or his original sentence.
I respectfully dissent.
WELLS, J., concurs.