729 So.2d 369 (1998)
Ronald THOMAS, Petitioner,
v.
Harry K. SINGLETARY, Jr., etc., et al., Respondents.
James V. Downes, Petitioner,
v.
Harry K. Singletary, Jr., etc., Respondent.
Nos. 90128, 90188.
Supreme Court of Florida.
December 24, 1998.
Rehearing Denied March 22, 1999.
Robert Augustus Harper and Steven Brian Whittington of Robert Augustus Harper Law Firm, P.A., Tallahassee, Florida, and Nancy A. Daniels, Public Defender and Chet Kaufman, Assistant Public Defender, Second Judicial Circuit, Tallahassee, Florida, for Petitioners.
Louis A. Vargas, General Counsel, Susan A. Maher, Deputy General Counsel, and MaryEllen McDonald and Lisa M. Bassett, Assistant General Counsel, Department of Corrections, Tallahassee, Florida, and William L. Camper, General Counsel, and Kim M. Fluharty, Assistant General Counsel, Florida Parole Commission, Tallahassee, Florida, for Respondents.
HARDING, C.J.
Inmates Ronald Thomas and James V. Downes separately petition this Court for writs of habeas corpus. We have jurisdiction,[1] consolidate their petitions, and deny relief.[2]
*370 Both petitions involve ex post facto challenges to a prison overcrowding program called Control Release, which took effect on September 1, 1990. The Control Release legislation originally provided that certain inmates would be eligible for early supervised release if and when the prison population reached 97.5% of "lawful capacity." See ch. 89-526, § 2, at 2659-60, Laws of Fla. (establishing Control Release program); id. § 52, at 2690 (establishing effective date of control release program); see also § 947.146, Fla. Stat. (1989) (the resulting Control Release statute).
More specifically, and as pertinent here, this legislation created the Control Release Authority ("the Authority," made up of members of the Parole Commission); mandated that the Authority establish a control release date for all eligible inmates; and granted the Authority "the power and duty to ... [e]xtend or advance the control release date of any inmate for whom a date has been established, based upon ... [l]awful capacity of the state prison system." § 947.146(6), Fla. Stat. (1989) (emphasis added). The legislation further explicitly provided that "[n]o inmate has a right to control release. Control release is an administrative function solely used to manage the state prison population within lawful capacity." Ch. 90-337, § 12, at 2785, Laws of Fla.; § 947.146(2), Fla. Stat. (Supp.1990).
In the years after its initial passage, this legislation was amended several times to, among other things, increase the applicable percentage threshold; replace the base term "lawful capacity" with the larger term "total capacity"; and render ineligible certain classes of inmates who had previously been eligible for the control release program. Finally, in 1996, the legislature ultimately voided all existing control release dates and provided that "no inmate shall be eligible for release under any previously established control release date." Ch. 96-422, § 19, at 3326, Laws of Fla.; § 947.146(14), Fla. Stat. (Supp. 1996).
Both Thomas and Downes were, at different times, eligible for the Control Release program, and both had control release dates established and advanced many times. Both, to varying degrees, were retrospectively subject to some or all of the amendments discussed above, and both ultimately had their control release dates canceled under the 1996 legislation.
Relying primarily on Lynce v. Mathis, 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997), Thomas and Downes now both urge that such retrospective application of these amendments, and the ultimate cancellation of their respective control release dates, violated ex post facto principles. We disagree.
Lynce dealt with Administrative Gain Time and Provisional Credits legislation, which explicitly provided only for the granting of overcrowding gaintime, but not for the taking away of same. As emphasized above, the Control Release legislation explicitly provides for the Authority's advancement of, and the extension of, an inmate's control release date. Thus, unlike Administrative Gain Time and Provisional Credits, there was a "sliding scale" built into the Control Release program since its inception. Given this sliding scale and the explicit provision that no inmate has a right to Control Release, inmates like Thomas and Downes were always on notice that they might ultimately obtain no benefit whatsoever from the program. Accordingly, we hold that the fact that their control release dates were retrospectively subject to legislative amendments and then ultimately canceled "create[d] only the most speculative and attenuated possibility of ... increasing the measure of punishment for [their] crimes." California Dept. of Corrections v. Morales, 514 U.S. 499, 509, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995). Thus, there has been no constitutional violation, and we deny both petitions.[3]
It is so ordered.
*371 OVERTON, SHAW and WELLS, JJ., and DAVIS, Associate Justice, concur.
KOGAN and ANSTEAD, JJ., dissent.
NOTES
[1] Art. V, § 3(b)(9), Fla. Const.
[2] We are simultaneously releasing three other opinions which also concern overcrowding credits (either Emergency Gain Time, Administrative Gain Time, Provisional Credits, Control Release, or all four programs). While each of these opinions are similar because they discuss the effect that the United States Supreme Court's decision in Lynce v. Mathis, 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997), has had on gain time caselaw, they are different in several ways.

Gomez v. Singletary, Nos. 90,642, 90,654, 90,655, 90,754, 90,829, ___ So.2d ___, 1998 WL 892663 (Fla. Dec. 24, 1998), addresses gain time in the context of prisoners who were never awarded certain types of credits but should have been awarded such credits. It holds that the subsequent revisions in the prison overcrowding statutes which effectively made the petitioners ineligible to receive any credits constituted an ex post facto violation.
Meola v. Department of Corrections, Nos. 89,982, 90,148, 90,241, ___ So.2d ___, 1998 WL 904304 (Fla. Dec. 24, 1998), addresses gain time in the context of prisoners who had their Administrative Gain Time and/or Provisional Credits canceled. It holds that the petitioners were not entitled under ex post facto principles to the reinstatement of the overcrowding credits that they had actually been awarded, but which were subsequently canceled. It also holds that the petitioners were accorded due process in the cancellation of the credits and that there was no equal protection violation.
State v. Lancaster, No. 86,312, ___ So.2d ___, 1998 WL 892627 (Fla. Dec. 24, 1998), addresses gain time in the context of prisoners who had their Administrative Gain Time or Provisional Credits forfeited upon revocation of probation. It holds that the State has statutory authority to forfeit their credits, but only for offenses committed after a certain date and that the 1993 statute called the Safe Streets Initiative could not be used to cancel their gain time as concerns inmates who were released on supervision before its enactment.
[3] We note that, while Thomas is not entitled to the relief he has requested, he may be entitled to benefits provided by other overcrowding programs in effect at the time he committed his offense. However, because he has not raised this issue, we do not directly address it.