731 So.2d 1227 (1998)
STATE of Florida, Petitioner,
v.
Anthony LANCASTER, Respondent.
No. 86312.
Supreme Court of Florida.
December 24, 1998.
Rehearing Denied February 10, 1999.
Robert A. Butterworth, Attorney General, Celia Terenzio, Bureau Chief Assistant Attorney General and Sarah B. Mayer, Assistant Attorney General, West Palm Beach, for Petitioner.
Richard L. Jorandby, Public Defender and Anthony Calvello, Assistant Public Defender, West Palm Beach, for Respondent.
OVERTON, Justice.
The United States Supreme Court vacated our decision in State v. Lancaster, 687 So.2d 1299 (Fla.1997), and remanded the case for further consideration in light of its decision in Lynce v. Mathis, 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997); See Lancaster v. Florida, ___ U.S. ___, 118 S.Ct. 37, 139 L.Ed.2d 5 (1997). This is another case involving the application of ex post facto principles to a legislative change in the gain time statutes. In our prior *1228 opinion we found there was no ex post facto violation and that the legislature could constitutionally make a disadvantageous, retroactive change in Administrative Gain Time because overcrowding gain time was designed to alleviate unpredictable prison overcrowding. As explained in more detail below, we find that the United States Supreme Court decision in Lynce mandates a holding that ex post facto principles do apply to overcrowding credits. In this opinion we approve in part and quash in part the Fourth District Court of Appeal's decision in Lancaster v. State, 656 So.2d 533 (Fla. 4th DCA 1995). We further instruct the State to apply the principles expressed in this decision to all similarly situated inmates. We note that this case is distinguishable from Meola v. Department of Corrections, 732 So.2d 1029 (Fla.1998), and Thomas v. Singletary, 729 So.2d 369 (Fla.1998), in which we are denying relief. Meola and Thomas, as well as another gain time case, Gomez v. Singletary, 733 So.2d 499 (Fla.1998)(granting relief) are being released simultaneously with this case.[1] At the outset, it must be recognized that neither the legislature, the attorney general, nor this Court has been able to convince the United States Supreme Court that the Ex Post Facto Clause in the United States Constitution does not apply to gain time statutes. In 1979, we held in accordance with the theory and argument of the Attorney General that gain time statutes were a matter of legislative grace. See Harris v. Wainwright, 376 So.2d 855 (Fla.1979). At approximately the same time, we denied another petition relying on Harris. See Weaver v. Graham, 376 So.2d 855 (Fla. 1979). On certiorari to the United States Supreme Court, that Court disagreed and reversed our judgment in Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). The Supreme Court found that a legislative act changing the gain time statutes enacted after the commission of a criminal act could not constitutionally be used to extend a defendant's sentence. Id., 450 U.S. 24, 101 S.Ct. at 968. More recently, in 1996, we again accepted the State's view that the cancellation of gain time given inmates for the purpose of relieving prison overcrowding did not violate ex post facto principles because overcrowding gain time was not "earned," but rather, was awarded solely for administrative purposes, and therefore an inmate had no vested right in retaining such gain time. See Calamia v. Singletary, 686 So.2d 1337 (Fla.1996). Again that view has been rejected and our opinions in Calamia and this case have been vacated by the United States Supreme Court. See Calamia v. Singletary, 520 U.S. 1141, 117 S.Ct. 1309, 137 L.Ed.2d 473 (1997) (judgment vacated pursuant to Lynce), mandate confirmed to, 694 So.2d 733 (Fla.1997) (relief granted on remand); *1229 Lancaster v. Florida, ___ U.S. at ___, 118 S.Ct. at 37.
As noted by the chart in the attached appendix, there have been multiple statutes providing for relief of prison overcrowding which, together with the United States Supreme Court decisions, have caused major administrative problems for the Department of Corrections in calculating a constitutional release date for the inmates in their custody. Given the decisions of the United States Supreme Court, the key date for determination of an inmate's gain time entitlement is the date of the criminal offense.

Lancaster: Factual and Procedural History
Lancaster's underlying offense occurred on May 3, 1987, and he was given an incarcerative sentence followed by a specified period of probation. Due to the award of several types of gain time including Administrative Gain Time and Provisional Credits, Lancaster was released in 1991 to begin service of the probationary portion of his sentence. Lancaster violated his probation and it was revoked in 1994. Lancaster was then resentenced. At that time, Lancaster was given credit for his previously awarded incentive and basic gain time (because his offense occurred before October 1, 1989, the effective date of the amendment to the gain time forfeiture statutes providing for forfeiture of all gain time upon the revocation of probation, community control or Provisional Release). See §§ 944.28(1), 948.06(6), Fla. Stat. (1989); State v. Green, 547 So.2d 925 (Fla.1989)(concerning the need for statutory authority for gain time forfeiture), modified, Dowdy v. Singletary, 704 So.2d 1052 (Fla.1998).
The significant fact for this case, however, is that Lancaster was not given credit for his previously awarded overcrowding gain time (Administrative Gain Time and Provisional Credits). He was not given credit because, in accordance with our decision in Tripp v. State, 622 So.2d 941, 942 n. 2 (Fla.1993),[2] overcrowding gain time was not included under the general rubric of "gain time" which an inmate was entitled to under our prior opinion in State v. Green, 547 So.2d 925 (Fla.1989). These decisions were rendered prior to the United States Supreme Court decision in Lynce.
The Fourth District Court in its appeal of this case held that Lancaster had a vested right in the benefits of the Administrative Gain Time statute which was in effect at the time of the offense. Lancaster v. State, 656 So.2d 533 (Fla. 4th DCA 1995), quashed, 687 So.2d 1299 (Fla.), vacated, ___ U.S. ___, 118 S.Ct. 37, 139 L.Ed.2d 5 (1997). On review of that decision, we found conflict[3] between the Fourth District's decision in Lancaster and our decision in Orosz v. Singletary, 655 So.2d 1112 (Fla.1995), superseded by 693 So.2d 538 (Fla.1997)(on rehearing). We quashed the Fourth District's decision explaining that it had misinterpreted our decision in Orosz and the holdings in several other cases. See Lancaster, 687 So.2d at *1230 1300; see also Art. I, § 10, Fla. Const.; U.S. Const. art. I, § 10. We clarified that our holding in Orosz was narrow and only stood for the proposition that for a certain interval of time, the State lost its statutory authority to combine consecutive sentences into a single term (or overall sentence) for the purpose of awarding or forfeiting gain time. Lancaster, 687 So.2d at 1299. We further indicated that Orosz only applied to an inmate who: (1) committed an offense during the interval between July 1, 1978, and June 16, 1983; (2) was in service of a sentence at the time of the offense; (3) was given a sentence to run consecutively to the sentence for the previous offense; and (4) had completed the sentence for the previous offense before June 17, 1993. We also reaffirmed our position that overcrowding gain time was not subject to the Ex Post Facto Clause, citing to our decision in Calamia v. Singletary, 686 So.2d 1337 (Fla.1996). See also Lancaster, 687 So.2d at 1299-1300.
It is clear that our previous opinion in this case consisted of two parts. The first part clarified the holding in Orosz and the second part reaffirmed our original decision in Calamia. Our opinion in Orosz was not based on ex post facto principles, but rather on statutes concerning the appropriate calculation of consecutive sentences. It is important to emphasize that the clarification of Orosz in our original Lancaster opinion is unaffected by this decision. Further, we expressly reaffirm that clarification.
As noted, the second part of our decision in Lancaster held that there was no constitutional violation when inmates were not given credit for the Administrative Gain Time and Provisional Credits awarded during the incarcerative portion of their initial sentences (before their probation revocation) because such overcrowding gain time was not subject to the Ex Post Facto Clause. That part of our prior opinion is clearly affected by Lynce, as set forth below.

Application of Lynce to Lancaster
Three statutes were enacted after the commission of Lancaster's criminal offense which could be asserted as a legal basis to cancel Lancaster's overcrowding gain time. The first two were 1989 amendments to sections 948.06 and 944.28(1). See § 944.28(1); 948.06(6), Fla. Stat. (1989). They added revocation of probation, community control, and provisional release to the circumstances permitting gain time forfeiture. Id. The third statute was section 944.278, Florida Statutes (1993), which was part of the act known as the "Safe Streets Initiative" enacted on June 17, 1993. It canceled credits for inmates in custody or upon their return to custody.
The State asserts that when Lancaster was returned to prison in 1994, the State did not apply section 944.278 (the Safe Streets Initiative) to Lancaster to cancel his overcrowding gain time because before Lancaster was returned to prison, i.e., at resentencing, Lancaster had already been denied credit for his overcrowding gain time. Therefore, the State maintains that there were no overcrowding credits to cancel under section 944.278. The State alleges, however, that overcrowding gain time is still distinguishable from "regular" (basic and incentive) gain time and that although there is no viable statutory authority for its forfeiture under Green, the State does not need any statutory authority to deny credit for overcrowding gain time. The State maintains that overcrowding gain time is distinguishable because: (1) this Court stated in Bowles v. Singletary, 698 So.2d 1201 (Fla.1997), that Bowles' Control Release credits (another type of overcrowding gain time) had been "used" to attain early release and had not been cancelled by any subsequent legislation, and (2) that overcrowding gain time is not "earned."
We reject the contention that there is such a distinction. First, we note that like other types of gain time, the State must have statutory authority to forfeit overcrowding gain time upon supervision revocation. *1231 See generally State v. Green, 547 So.2d 925 (Fla.1989). We find, however, that in some cases, the State may claim statutory authority to forfeit overcrowding gain time. Section 944.28(1) states that "if the ... probation ... granted to [the prisoner] is revoked, the department may, without notice or hearing, declare a forfeiture of all gain-time earned according to the provisions of law by such prisoner prior to ... his release." (Emphasis added.)[4] Section 948.06(6) states that "whenever probation ... is revoked, the offender, by reason of his misconduct, may be deemed to have forfeited all gain-time." (Emphasis added.)[5] It appears that the State believes that neither of those sections includes Provisional Credits or Administrative Gain Time. We believe, however, that sections 944.28(1) and 948.06(6) do provide the State with such authority but they can only be invoked for inmates whose underlying offenses were committed on or after October 1, 1989 (the effective date of the amendments providing for such forfeitures). Lancaster's original offense was committed before that date and thus the State cannot forfeit his Provisional Credits or Administrative Gain Time under those statutes.
We further reject the argument that Lancaster's overcrowding gain time has already been canceled or may now be canceled pursuant to section 944.278, Florida Statutes (1993)(the Safe Streets Initiative). We expressly hold that the application of that section to Lancaster would violate ex post facto principles.
As mentioned above, the Safe Streets Initiative was enacted in 1993. It canceled all Administrative Gain Time and Provisional Credits for all inmates in custody. The act did not cancel such credits for releasees unless and until they were returned to custody. Section 944.278 provides, in pertinent part:

All awards of administrative gain-time under s. 944.276 and provisional credits under s. 944.277 are hereby canceled for all inmates serving a sentence or combined sentences in the custody of the department, or serving a state sentence in the custody of another jurisdiction. Release dates of all inmates with 1 or more days of such awards shall be extended by the length of time equal to the number of days of administrative gain-time and provisional credits which were canceled. Inmates who are out of custody due to an escape or a release on bond, or whose postrelease supervision is revoked on or after the effective date *1232 of this act, shall have all administrative gain-time and provisional credits canceled when the inmate's release date is reestablished upon return to custody. Offenders who are under provisional release supervision as of the effective date of this section shall be subject to the terms and conditions established at the time of release until such offenders have been discharged from supervision. Offenders who have warrants outstanding based on violation of supervision as of the effective date of this section, or who violate terms of supervision subsequent to enactment of this section, shall be terminated from supervision and returned to custody. All provisional credits shall be canceled when an offender's tentative release date is reestablished.
§ 944.278, Fla. Stat. (1993) (emphasis added). We conclude that both the first emphasized portion of section 944.278 providing for the cancellation of the awards for "all inmates serving a sentence or combined sentences in the custody of the department," and the second emphasized portion providing for the cancellation of credits specifically directed at releasees would technically cover Lancaster's situation.
The State argues that the portion of the Safe Streets Initiative concerning the cancellation of credits specifically directed at releasees (the second emphasized section above) would be constitutional even if it were applied to inmates whose original offenses were committed prior to enactment, so long as the misconduct necessitating the revocation of supervision was committed after the enactment of section 944.278. The State argues that there is a critical distinction between laws that change the penalty for the original offense and laws that change penalties for new behavior, which results in the revocation of post-release supervision.
The State asserts that the circumstances surrounding the loss of Lancaster's overcrowding gain time were factually different from those surrounding Lynce's case. It argues that while Lynce committed no violation of any terms of release, Lancaster, on the other hand, violated the terms of his release. See Lynce v. Mathis, 519 U.S. at 436, 117 S.Ct. 891. In other words, it is asserted that Lynce's case concerned a cancellation of overcrowding credits without any subsequent misbehavior on Lynce's part while Lancaster's case concerned a forfeiture of overcrowding credits due to the revocation of probation caused by Lancaster's subsequent misbehavior. We note, however, that Lancaster had already been released on probation by the time the Safe Streets Initiative was enacted. Furthermore, we have already rejected the "subsequent or future misconduct" argument in our recent decision in Britt v. Chiles, 704 So.2d 1046, 1047 (Fla.1997). In that case, the State argued that there was no ex post facto violation when it retroactively applied a later-enacted statute and rule which provided for a mandatory disciplinary punishment consisting of up to a six-month period of time in which inmates were made ineligible to receive gain time. The State argued that while there was no such mandatory provision in the statutes in effect at the time of Britt's offense, there was no constitutional violation because the increased punishment was due to Britt's future or subsequent misconduct, not the original crime. We concluded that under Weaver v. Graham 450 U.S. 24, 34, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), as reaffirmed in Lynce v. Mathis, 519 U.S. at 442, 117 S.Ct. 891, the new provision violated ex post facto principles because, "by curtailing the availability of future credits it effectively postpone[d] the date when [an inmate] would become eligible for early release." Britt, 704 So.2d at 1048 (quoting Lynce, 519 U.S. at 442, 117 S.Ct. 891). Accordingly, we find we are required to reject the State's "subsequent or future misconduct" argument in this case as well.
There is also the question of whether the State can constitutionally invoke the aforementioned first emphasized portion of section 944.278 providing for the cancellation *1233 of the awards for "all inmates serving a sentence or combined sentences in the custody of the department."
Before Lynce was decided, the time of the offense was the only relevant time frame for determining whether an inmate had an ex post facto right to a certain benefit. See Weaver v. Graham, 450 U.S. 24, 30, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). Further, there was no ex post facto violation where a retroactive change affected a benefit, if, at the time of the offense, the desired benefit was merely speculative. See California Dept. of Corrections v. Morales, 514 U.S. 499, 509, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995). After Lynce, however, an ex post facto inquiry involves not only looking at the time of offense, but also involves looking at subsequent time frames as well to determine whether a possible, yet speculative benefit has become more definite. See Lynce v. Mathis, 519 U.S. at 446, 117 S.Ct. 891. In Lynce, the grant of overcrowding credits was speculative at the time of that inmate's offense because no one could tell for sure whether the prison overcrowding levels would become so extreme as to trigger the relevant overcrowding statutes. Nevertheless, Lynce was subsequently awarded a certain amount of credits which ultimately led to his release from incarceration. Therefore, by the time Lynce was released, the credits were clearly no longer non-quantifiable or unknown. On the contrary they had become a certainty. Id. (concluding that "unlike in Morales, the actual course of events makes it unnecessary to speculate").
In the present case, as in Lynce's case, at the time of Lancaster's offense overcrowding gain time had already been provided for by statute. See § 944.598, Fla. Stat. (Supp.1986) (Emergency Gain Time); § 944.276, Fla. Stat. (1987)(Administrative Gain Time). Accordingly, Lancaster could have contemplated receiving overcrowding credits at the time of his offense. Furthermore, Lancaster did receive these credits and was actually released by way of the above-mentioned statutes. Furthermore, when Lancaster was released on probation, the 1993 Safe Streets Initiative had not been enacted yet. Thus, akin to the situation with Lynce, Lancaster's "hope" of receiving overcrowding gain time had become a reality.
As mentioned above, the Safe Streets Initiative was enacted in 1993, long after Lancaster's underlying offense and approximately two years after his release on probation. If the State were to now apply that later-enacted law to Lancaster and cancel his overcrowding gain time, the effect of that law would be to retroactively take away something to which Lancaster had an expectation at the time of his offense, actually received during his incarceration, and actually retained after revocation or must now be awarded because the 1989 forfeiture provision, section 944.28(1), may not be applied to him (as discussed above). We find that the application of the Safe Streets Initiative to Lancaster now would result in the taking of something which was certainly not speculative. Accordingly, we conclude that under the analysis of Lynce, the State cannot apply section 944.278 (the Safe Streets Initiative) to Lancaster to cancel his Administrative Gain Time or Provisional Credits without violating the Ex Post Facto Clause. See also Jackson v. Singletary, 695 So.2d 494 (Fla. 3d DCA 1997)(applying first part of section 944.278 canceling awards for all inmates serving sentences in DOC's custody to petitioner would be an ex post facto violation based on analysis in Lynce); State ex rel. Florida Dept. of Corrections v. Stevenson, 695 So.2d 727 (Fla. 5th DCA 1996) (finding it unconstitutional to apply second part of section 944.278 to Stevenson, who had been released prior to the statute's enactment, because such inmates could not have contemplated the later-enacted statute's "additional consequences for their violation of probation"), review granted, 687 So.2d 1306 (Fla.1997).
*1234 For the foregoing reasons, we approve the result of the Fourth District's decision finding that the State cannot cancel or forfeit Lancaster's Provisional Credits or his Administrative Gain Time.
It is so ordered.
HARDING, C.J., and SHAW, KOGAN and ANSTEAD, JJ., concur.
WELLS, J., dissents with an opinion.
PARIENTE, J., recused.
WELLS, Justice, dissenting.
In accord with Justice Grimes' dissent in Britt v. Chiles, 704 So.2d 1046 (Fla.1997), in which I joined, I dissent to the majority's unwarranted and unnecessary extension of Lynce v. Mathis, 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997), to the facts of this case. The United States Supreme Court does not require this reversal.
This case is plainly distinguishable from Lynce by the fact that Lancaster violated the terms of his release.

 APPENDIX
 Overcrowding relief programsDatesThresholds
Emergency Gain Time Admin. Gain Time Prov. Credits Control Release § 944.598 § 944.276 § 944.277 § 947.146
6/16/83-6/1/86: 98% 2/5/87-6/30/88: 7/1/88-8/31/90: 9/1/90-6/16/93: of LC* 98% 97.5% below 97.5% of LC* of LC* of LC*
 6/2/86-6/16/93: 99% 9/1/90-6/16/93: 6/17/93-4/24/94: of LC* 98% at or below 99% of LC* of LC*
 4/25/94-/9/95: between 99% and 100% of LC**
 6/10/95-present: between 99% and 100% of TC**

* LC = Lawful Capacity. See relevant statute referred to above. See also aff'd see also § 944.023(1)(b); § 944.598(6)(b) (note 1), Fla. Stat. (Supp.1992).
** TC = Total Capacity. See relevant statute referred to above. In 1995, "Lawful Capacity" was changed to "Total Capacity" and the definition now meant 150% of the total design capacity (except that certain areas such as the medical and mental facilities were to be maintained with less inmate population). See § 947.146(2), 944.023(b), Fla. Stat. (1995); ch. 95-251, §§ 1,4, at 2235-36, 2238, Laws of Fla. Emergency gain time was repealed effective June 17, 1993. See ch. 93-406, § 32, Laws of Fla.
Emergency gain time was repealed effective June 17, 1993. See ch. 93-406, § 32, Laws of Fla. Administrative gain time was repealed effective July 1, 1988. See § 944.276, Fla. Stat. (1988); ch. 88-122, § 6, Laws of Fla. The provisional credits program was repealed and all prior-awarded provisional credits and administrative gain time were cancelled effective June 17, 1993. See § 944.278, Fla. Stat. (1993); ch. 93-406, § 32, 44, Laws of Fla. The Control Release statute is still in effect. See § 947.146, Fla. Stat. (1997).
NOTES
[1] In Meola, we address gain time in the context of prisoners who had their Administrative Gain Time and/or Provisional Credits canceled. We hold that the petitioners are not entitled under ex post facto principles to the reinstatement of the overcrowding credits that they had actually been awarded, but which were subsequently canceled. We also hold that the petitioners were accorded due process in the cancellation of the credits and that there was no equal protection violation.

In Thomas, we address the extension and then cancellation of prisoner's release dates under the Control Release program. We hold that since inmates were always on notice that their control release dates could be changed to a later date, the legislative amendments to the program and, ultimately, the cancellation of their release dates did not result in an ex post facto violation.
In Gomez, we address gain time in the context of prisoners who were never awarded certain types of credits but should have been awarded such credits. We hold that the subsequent revisions in the prison overcrowding statutes which effectively made the petitioners ineligible to receive any credits constituted an ex post facto violation.
While each of these opinions are similar because they discuss the effect that the United State's Supreme Court decision in Lynce v. Mathis has had on gain time caselaw, they are clearly distinguishable, as discussed below.
[2] In footnote 2 of our opinion in Tripp we noted that "prior to the enactment of chapter 89-531, Laws of Florida, `credit for time served' included jail time actually served and gain time granted pursuant to section 944.275, Florida Statutes (1991). State v. Green, 547 So.2d 925, 927 (Fla.1989). It does not include `provisional credits' or `administrative gain time' which is used to alleviate prison overcrowding and is not related to satisfactory behavior while in prison. See § 944.277, Fla. Stat. (1991). By virtue of chapter 89-531, the revocation of probation or community control now serves to forfeit any gain time previously earned. This change in the law is inapplicable to Tripp because his crimes were committed before October 1, 1989, the effective date of the act." Tripp, 622 So.2d at 943 n. 2. Prior to that date, there was statutory authority for the forfeiture of gain time upon revocation of parole and clemency, but not probation, community control, or provisional release. See § 944.28(1), Fla. Stat. (1989); ch. 89-531, § 6, at 2717, § 20, at 2721, Laws of Fla.; § 948.06(6), Fla. Stat. (1989); ch. 89-531, § 13, at 2720; § 20, at 2721, Laws of Fla.
[3] See Art. V, § 3(b)(3), Fla. Const.
[4] Section 944.28(1), Fla. Stat. (1989), as amended by chapter 89-531, section 6, at 2717, Laws of Florida, provided in pertinent part:

If a prisoner is convicted of escape, or if the clemency, conditional release as described in chapter 947, probation or community control as described in s. 948.01, provisional release as described in s. 944.277, or parole granted to him is revoked, the department may, without notice or hearing, declare a forfeiture of all gain-time earned according to the provisions of law by such prisoner prior to such escape or his release under such clemency, conditional release, probation, community control, provisional release, or parole.
(Emphasis added). As amended, this section went into effect on October 1, 1989. See ch. 89-531, § 2, at 2721, Laws of Fla.
[5] Chapter 89-531, section 13, Laws of Florida added subsection 6 to section 948.06, Florida Statutes. That amendment was codified in section 948.06(6), Florida Laws (1989), and provides, in pertinent part:

Notwithstanding any provision of law to the contrary, whenever probation or community control, including the probationary or community control portion of a split sentence, is violated and the probation or community control is revoked, the offender, by reason of his misconduct, may be deemed to have forfeited all gain-time or commutation of time for good conduct, as provided by law, earned up to the date of his release on probation or community control from a state correctional institution. This subsection does not deprive the prisoner of his right to gain-time or commutation of time for good conduct, as provided by law, from the date on which he is returned to prison.
This section also went into effect on October 1, 1989. See ch. 89-531, § 20, at 2721, Laws of Fla.