827 So.2d 967 (2002)
James W. MAYES and Timothy J. Bennett, Petitioners,
v.
Michael W. MOORE, Respondent.
No. SC00-927.
Supreme Court of Florida.
September 19, 2002.
*969 Nancy A. Daniels, Public Defender, and Chet Kaufman, Assistant Public Defender, Second Judicial Circuit, Tallahassee, FL, for Petitioners.
Carolyn Mosley, Assistant General Counsel and Judy Bone, Assistant General Counsel, Department of Corrections; William L. Camper, General Counsel, Kim M. Fluharty, Assistant General Counsel, and Mark J. Hiers, Assistant General Counsel, Florida Parole Commission, and Robert A. Butterworth, Attorney General, James W. Rogers, Tallahassee Bureau Chief, Criminal Appeals, and Trisha E. Meggs, Assistant Attorney General, Tallahassee, FL, for Respondents.
PER CURIAM.
James W. Mayes and Timothy J. Bennett petition this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(9), Fla. Const. For the reasons expressed below, we deny the petition.

*970 FACTS
In 1991 and 1992, respectively, Bennett and Mayes were convicted of a number of offenses and sentenced to various prison terms. They assert that at the time of their pleas they were not informed that, due to the nature of their offenses, they were eligible for placement in the Conditional Release Program. Under this program, any gain time an inmate receives is converted into conditional release supervision upon his or her release from prison.
In 1998, both Mayes and Bennett were released and placed on conditional release. By 1999, however, both had violated the terms of their release, and as a result, their supervision was revoked and their gain time was forfeited. The Department of Corrections (Department) then audited their sentences to determine whether they were entitled to any overcrowding credits under Gomez v. Singletary, 733 So.2d 499 (Fla.1998), which held that inmates are entitled to overcrowding gain time based on statutes in effect at the time of their offenses. As a result of the audit, the Department determined that in the mid-1990s, both Mayes and Bennett were eligible for and should have received approximately 800 days of provisional credits. Therefore, in early 2000, the Department awarded those credits to Mayes and Bennett "nunc pro tunc." In other words, the credits were applied in the same manner as if they had been awarded in the mid-1990s. However, immediately after the credits were awarded, they were forfeited due to Mayes and Bennett's 1999 conditional release revocations.
Mayes and Bennett have filed a habeas petition in this Court raising several issues with regard to their placement on conditional release and the conditional release statute itself, as well as the propriety of the Department's action in forfeiting the provisional credits they received as a result of the audit of their sentences under Gomez.

ANALYSIS

I. Conditional Release
The first issue presented is whether Mayes and Bennett are entitled to relief under Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962), because they were not informed either before negotiating a plea or before they were sentenced that they were eligible for placement in the Conditional Release Program and that under that program any gain time they received would be converted into conditional release supervision upon their release from prison. In Oyler, the United States Supreme Court held that where an offender is subject to the provisions of a recidivist statute which imposes an enhanced criminal penalty or sentence, the State must provide the defendant with actual notice and an opportunity to be heard before the court imposes sentence. 368 U.S. at 452, 82 S.Ct. 501. Thus, only if the conditional release statute is found to be a recidivist statute imposing an enhanced penalty would Mayes and Bennett be entitled to relief.[1]
*971 Under the current conditional release statute there are a number of different groups of inmates, including habitual offenders, who are subject to conditional release. See § 947.1405, Fla. Stat. (2001). For purposes of this case, the relevant group of inmates includes those who have committed crimes contained within category one through four of the Sentencing Guidelines (certain violent offenses) and who have also served a prior commitment to prison (either state or federal). See § 947.1405(2)(a), Fla. Stat. (2001). Neither Mayes nor Bennett disputes that he is within this group of inmates. They simply argue that under Oyler, at the time they pled guilty or nolo contendere they should have been given actual notice that they would be subject to the additional burden of postrelease supervision placed upon them by the conditional release statute.
We conclude that even though the conditional release statute applies to recidivists or repeat offenders, it is not a "recidivist" statute under Oyler. Recidivist statutes increase the maximum prison sentence that may be imposed upon certain offenders to protect society. The conditional release statute does not increase the maximum sentence. Rather, it simply requires that certain inmates will complete their sentences outside of prison, but still under a degree of supervision. As we recognized in Duncan v. Moore, 754 So.2d 708, 710 (Fla.2000), conditional release is not an increased punishment program at all, but rather an assistance program designed to "help these former inmates in bridging the gap between prison and the outside world."
Further, conditional release is not a form of sentence, and it is not imposed by a court. Although the statute may impose an undesirable condition upon the release of those subject to the statutory requirements by converting gain time that might be awarded into postrelease supervision, neither gain time nor conditional release is a true part of a criminal sentence. An inmate's eligibility for conditional release is established by statute. Inmates who are subject to conditional release are identified and their placement on conditional release is required, not by the sentencing court, but by the Parole Commission. Thus, for all of these reasons, we conclude that conditional release is not a recidivist program which imposes an enhanced criminal penalty or sentence. Because conditional release does not impose an enhanced criminal penalty or sentence, no actual notice of an offender's eligibility for this program is required under Oyler. Accordingly, Mayes and Bennett are not entitled to relief on this issue.
Petitioners next assert that the imposition of conditional release supervision by the Parole Commission constitutes a violation of separation of powers and an invalid delegation of legislative power because the statute allows the Parole Commission to place inmates on supervision without the knowledge or consent of the sentencing court and thus gives the commission unbridled discretion in determining the terms and conditions of the inmate's release.[2] We disagree.
Prior to the 1988 enactment of the conditional release statute, prison inmates' sentences expired when, with the combination of actual time served and gain time, they were released from prison. Since 1988, however, the Legislature has provided *972 that certain inmates must remain under supervision, as determined by the commission, after release from prison for a period of time equal to the amount of gain time awarded. This supervision has been provided under the terms of the statute, and thus, all have constructive knowledge of the applicable law.
In addition, the conditional release statute specifically provides the commission with the authority to establish the terms and conditions of conditional release,[3] and the general Parole Commission statute lists all the powers of the Parole Commission (including the establishment of terms and conditions) under its various programs such as control release, parole, and conditional release.[4] Further, the Florida Constitution gives the Parole Commission the authority to "grant paroles or conditional releases to persons under sentences for crime." See art. IV, § 8, Fla. Const. Accordingly, while the Legislature by statute has outlined some of the duties to be exercised by the commission, it is not the Legislature that gives the commission the power to place inmates on supervision; the power flows from the Florida Constitution. Therefore, the establishment of the terms and conditions of conditional release is not a power reserved to either the courts or the Legislature under Florida's constitution. Thus, there is no improper delegation or any violation of the principle of separation of powers.
Finally, petitioners argue that the conditional release statute is an unconstitutional bill of attainder. A bill of attainder is a law that legislatively determines guilt for prior conduct and inflicts punishment upon an identifiable individual without the protections of a judicial trial. See Cassady v. Moore, 737 So.2d 1174, 1178 (Fla. 1st DCA 1999). By prohibiting bills of attainder, the framers of the Constitution intended to protect the concept of separation of powers and due process by limiting legislatures to the task of lawmaking, leaving "the application of those rules to individuals in society ... [to the] other departments." Fletcher v. Peck, 6 Cranch 87, 10 U.S. 87, 136, 3 L.Ed. 162 (1810). As mentioned above, the conditional release statute became effective in 1988 and provided for post-prison supervision for certain types of repeat offenders who commit certain new crimes. Since it does not punish specific individuals for acts already committed, it is not a bill of attainder.

II. Forfeiture of Credits
Mayes and Bennett also argue that when their conditional release supervision was revoked and they were returned to prison, the Department improperly forfeited the 800 days of provisional credits awarded to them under Gomez v. Singletary, 733 So.2d 499 (Fla.1998). The credits were awarded in early 2000, after Mayes and Bennett were returned to prison, but were immediately forfeited due to their 1999 conditional release violations.
Petitioners first assert that there was no statutory authority for the forfeiture of overcrowding gain time (including provisional credits) upon supervision revocation until 1998 when this Court issued its decision in State v. Lancaster, 731 So.2d 1227 (Fla.1998). That being so, they argue, *973 since petitioners' offenses were committed prior to that date, forfeiture of their gain time constitutes an ex post facto violation. In sum, petitioners argue that the Department may not retrospectively apply the Lancaster decision to a preexisting criminal offense. We disagree.
The Supreme Court has held that the Ex Post Facto Clause of the United States Constitution does not generally apply to case law. See Marks v. United States, 430 U.S. 188, 191, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977). The clause applies to a judicial opinion only when it results in "an unforeseeable enlargement of a criminal statute." Id. at 192, 97 S.Ct. 990 (quoting Bouie v. City of Columbia, 378 U.S. 347, 353-54, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964)); see also Rogers v. Tennessee, 532 U.S. 451, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001) (holding that Bouie only restricted the retroactive application of judicial interpretations of criminal statutes to those that are unexpected and indefensible by reference to prior law). The Lancaster decision does not fall within this category.
First, the Lancaster decision did not create the statutory authority for the forfeiture of overcrowding gain time upon supervision revocation. That authority has been in effect since 1988, and it has provided for the forfeiture of "all gain time" upon conditional release supervision revocation. 731 So.2d at 1230-31; see also ch. 88-122, § 9, at 538, Laws of Fla. (codified at § 944.28(1), Fla. Stat. (Supp.1988)); id. § 92 at 572 (providing for effective date). Prior to Lancaster, the Department had not considered most types of overcrowding credits to be gain time. In Lancaster, this Court corrected that misinterpretation and made clear that the Department always had the authority to forfeit such creditsat least with regard to those inmates whose offenses were committed on or after the pertinent date in 1988. Lancaster, 731 So.2d at 1230-31.
Lancaster's interpretation of the gain time forfeiture statutes was not an unforeseeable enlargement of that statute. The Department had long considered administrative gain time to be forfeitable upon supervision revocation, and this Court had previously held that provisional credits were essentially the same as administrative gain time. See Griffin v. Singletary, 638 So.2d 500, 501 n. 1 (Fla.1994). Therefore, we conclude that the portion of the holding in Lancaster concluding that all types of gain time (including overcrowding credits) are forfeitable under the general gain time forfeiture statutes was not unforeseeable and thus there is no ex post facto violation.
Mayes and Bennett next argue that the Department may not forfeit credits for conduct which occurred before the credits were awarded. Under the circumstances of this case, we disagree. When the Department of Corrections is informed of a new court opinion requiring that it recalculate an inmate's gain time for periods of time in the past, it calculates the gain time due and awards it nunc pro tunc. In other words the Department records the gain time as if it had been awarded at the appropriate time in the past. When the Department does this, it refers to the date when the gain time should have been awarded as the "accrued date." The date on which a data entry employee enters the gain time award into the computer and credits it to the inmate's "account" or record is called the "posting date."
Petitioners assert that the Department should not be permitted to forfeit gain time which was "posted" to their records subsequent to their conditional release revocations. However, the "posting date" is not at all the relevant date for our consideration. The conditional release statute specifically provides for forfeiture of all gain time "earned up to the date of release." *974 See § 947.141(6), Fla. Stat. (2001) (emphasis added). Although petitioners' 800 days of provisional credits were posted in 2000, they were earned in the mid 1990s, on the Department's "accrued" date. Accordingly, the "accrued date" and not the "posting date" is the relevant date we must consider when determining whether late-awarded gain time may be forfeited. To do otherwise would result in inmates such as these petitioners receiving Gomez credits but not forfeiting them for a conditional release violation, while another inmate who received Gomez credits before being released on conditional release would forfeit the credits for a later violation. Because we find that petitioners' provisional credits were properly forfeited, they are not entitled to relief on this issue.
Finally, petitioners contend that the Department has, in essence, deemed them to have been on conditional release supervision while they were actually in prison and, therefore, is not giving them credit for this time. The Department's records show this to be a misconception. With regard to actual time (as opposed to gain time or overcrowding credits), the Department is simply refusing to credit the petitioners only for the actual time they spent outside of prison on conditional release. We find no impropriety in this action. Accordingly, we deny the instant petition for writ of habeas corpus.
It is so ordered.
ANSTEAD, C.J., SHAW, WELLS, PARIENTE, LEWIS, and QUINCE, JJ., and HARDING, Senior Justice, concur.
NOTES
[1] A recidivist statute is one that provides for an enhanced penalty if the offender has committed a number of prior crimes. While the United States Supreme Court has long considered habitual offender and other types of recidivist statutes to be constitutional, see generally McDonald v. Massachusetts, 180 U.S. 311, 312, 21 S.Ct. 389, 45 L.Ed. 542 (1901) ("Statutes imposing aggravated penalties on one who commits a crime after having already been twice subjected to discipline by imprisonment have long been in force ...."); see also Moore v. Missouri, 159 U.S. 673, 677, 16 S.Ct. 179, 40 L.Ed. 301 (1895) (noting that "the punishment for the second is increased, because, by [the defendant's] persistence in the perpetration of crime, he has evinced a depravity, which merits a greater punishment, and needs to be restrained by severer penalties than if it were his first offence"), the State must provide a defendant with a number of due process rights before imposing a recidivist enhanced criminal penalty or sentence.
[2] See art. II, § 3, Fla. Const. ("No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein.").
[3] Section 947.1405(2)(c) provides, in pertinent part, that "[a] panel of no fewer than two commissioners shall establish the terms and conditions of any such release." § 947.1405(2)(c), Fla. Stat. (2001).
[4] Section 947.13 (Powers and Duties of Commission), states, in pertinent part:

The commission shall have the powers and perform the duties of:
. . . .
(f) Establishing the terms and conditions of persons released on conditional release under s. 947.1405....
§ 947.13(1)(f), Fla. Stat. (2001).