WELLS, J.,
dissenting.
I dissent from the discharge of jurisdiction because the issue raised was correctly certified as a question of great public importance and should be addressed as such. Furthermore, by discharging jurisdiction, the majority allows a decision to stand that reaches inconsistent holdings and I conclude should be quashed.
FACTS AND PROCEDURAL HISTORY
Johnny Bolden was convicted of felonious possession of firearms, possession of a short-barreled shotgun, third-degree-felony aggravated assault, and second-degree-felony aggravated battery, in connection with an incident occurring on December 21, 1992. On April 27, 1993, he was sentenced to four concurrent ten-year terms, less 127 days of jail credit. Pursuant to section 775.087(2)(a), Florida Statutes (1991), Bolden could not begin earning gain time on his assault and battery sentences until he first served a minimum of three years. However, no such limit applied to his shotgun sentence. As a result, he eventually accrued 1334 days of gain time on his shotgun sentence and only 997 days of gain time on his assault and battery sentences.
Pursuant to section 944.275, Florida Statutes (1991), the Department of Corrections (DOC) calculated Bolden’s “tentative release dates” (TRDs) for each of his sentences.[1] His shotgun sentence was calculated as follows: start date of April 27, *374 1993, plus 3650 days (ten-year sentence), minus 127 days of jail credit, minus 1334 days of gain time, equals a TRD of April 25, 1999. However, due to the difference in gain time accrued on each sentence, his TRDs for the assault and battery sentences fell 337 days later, on March 27, 2000.[2]
Bolden was physically released from incarceration on March 27, 2000. Because he was sentenced as a habitual offender for the shotgun, assault, and battery convictions and was released prior to the expiration of those sentences due to accrued gain time, Bolden then was subject to “an extra post-prison probation-type program” [3] called “conditional release supervision,” as provided under section 947.1405, Florida Statutes (1991). The length of such supervision is established by the Florida Parole Commission (FPC) and “must not exceed the maximum penalty imposed by the court.” § 947.1405(6), Fla. Stat. (1991). In Bolden’s case, the FPC treated his conditional release supervision arising from the shotgun sentence as tolled during the 337 days he remained incarcerated on the other sentences and imposed two concurrent periods of conditional release supervision, one ending after 997 days and a second ending after 1334 days.
Unfortunately, Bolden violated the terms of his conditional release. On November 18, 2000, 236 days after his physical release, Bolden was returned to prison pursuant to section 947.141, Florida Statutes (1991), which provides that the FPC may revoke conditional release upon violation of its terms and “return the releasee to prison to serve the sentence imposed upon him.” Pursuant to the same section, the DOC deemed forfeited all gain time Bolden earned prior to his conditional release. The DOC then recalculated his TRDs for each sentence, taking into consideration one day of time awarded to Bolden by the FPC and 124 days of gain time earned after his return to prison. The DOC’s recalculations for the shotgun sentence were as follows: start date of April 27, 1993, plus 3650 days (ten-year sentence), minus 127 days of jail credit, minus 1334 days of gain time (equals initial TRD), plus 337 days (time between release dates for shotgun sentence and longer sentences), plus 236 days (time between physical release and reincarceration), plus 1334 days (gain time forfeited), minus one day (FPC credit), minus 124 days (gain time awarded since reincarceration), equals recalculated TRD of March 11, 2004. This time his recalculated TRD for the assault and battery charges fell 337 days earlier, on April 9, 2003.
Bolden filed a petition for a writ of mandamus in the circuit court, claiming the DOC erroneously increased his total time of incarceration by adding, in the recalculation of his shotgun sentence, the 337 days between his initial TRD for the shotgun sentence and the date of his physical release on March 27, 2000. In response, the DOC argued that Bolden was neither serving the incarcerative portion of his shotgun sentence nor on conditional release during those 337 days; therefore, in order to ensure he serves the full ten years of the shotgun sentence, his release date for the shotgun sentence must be extended by the total number of days (337 plus 236) on which he was not serving the incarcerative portion of that sentence. To do otherwise, the DOC urged, would grant Bolden prison credit toward his shotgun *375 sentence for time served solely on other charges. The circuit court agreed with the DOC and denied Bolden’s petition, citing Evans v. Singletary, 737 So.2d 505 (Fla.1999).
Bolden next petitioned the First District Court of Appeal for a writ of certiorari. The First District granted the petition and concluded the circuit court had departed from the essential requirements.of the law. See Bolden v. Moore, 865 So.2d 1, 5 (Fla. 1st DCA 2003). The First District distinguished Bolden’s case from this Court’s decision in Evans v. Singletary, 737 So.2d 505, 508-09 (Fla.1999), in which we held that the DOC “may use an unexpired Conditional Release-eligible sentence to determine the length of the supervision, and then toll the running of that supervision period until the inmate has been released from prison,” as well as other similar decisions, by noting they “all involve[d] concurrent sentences for unrelated crimes ... [whereas] ... Bolden was serving concurrent ten-year sentences for related crimes arising from the same incident.” Bolden, 865 So.2d at 3. Turning to relevant statutes, the First District concluded that no statutory support existed for the DOC’s method of recalculating Bolden’s TRD. Having reviewed case law and statutes, the court held:
We conclude that Evans, [State v. Savage, 589 So.2d 1016 (Fla. 5th DCA 1991), Bradley v. State, 721 So.2d 775 (Fla. 5th DCA 1998), Brooks v. State, 762 So.2d 1011 (Fla. 5th DCA 2000)], and the 1991 version of section 947.1405(2) do not support tolling of Bol-den’s conditional-release supervision on the shotgun charge while he continued serving the incarcerative sentences for the aggravated assault and aggravated battery offenses, nor do they mandate that the 337 days he remained in prison on the shotgun charge while pending release on the assault and battery offenses be added to the calculation of a new release date.
Id. at 5.
ANALYSIS
Bolden contests neither the forfeiture of his gain time earned up to the date of his conditional release nor the extension of his recalculated TRD by the 236 days during which he was physically out of prison and on conditional release supervision. The only issue raised is whether the DOC properly extended his recalculated TRD for the shotgun sentence by the 337 days he remained incarcerated while serving the assault and battery sentences. Secretary Crosby, on behalf of the DOC, urges this Court to find that Bolden was neither serving prison time creditable toward his shotgun sentence nor on conditional release during the contested 337 days. Such a finding, he argues, would then require the extension of Bolden’s TRD for his shotgun sentence not only by the 236 days he was actually out of prison but also by the 337 days he was constructively released from the incarcerative portion of that sentence, in order to avoid effectively granting Bolden prison time credit toward the shotgun sentence for a period when he was solely serving the assault and battery sentences. Bolden, on the other hand, argues that when the DOC recalculated his TRDs and retroactively reclassified his gain time as forfeited, it should also have retroactively reclassified the contested 337 days as prison time served on the shotgun sentence so that the total number of days he serves in prison on all concurrent sentences will not exceed ten years minus other lawful credits.
Although the decision below focuses primarily on whether Bolden’s period of conditional release supervision was properly tolled during the 337 days, the parties’ *376 arguments indicate that the primary question to be answered in this dispute is whether those 337 days should be treated as time served and thus credited toward the incarcerative portion of his shotgun sentence upon release revocation. When an offender violates conditional release supervision, has his gain time forfeited, and is returned by FPC to prison “to serve the sentence imposed upon him,” it must naturally follow that the DOC is to extend his TRD from his original sentencing date by the number of days on which he was not serving the incarcerative portion of the sentence to be completed.[4] Clearly, at the time, Bolden was not serving the incarcer-ative portion of his shotgun sentence during the contested 337 days because if not for his other sentences, he would have been conditionally released from the shotgun sentence on April 25, 1999. Therefore, if the 337 days are to be treated as prison time served and credited toward the shotgun sentence, that must be a retroactive construction.
Inexorably, the decision below appears to reach two inconsistent holdings. The decision focuses almost entirely on determining whether Bolden’s conditional release supervision was properly tolled. After lengthy discussion on that point, the court concluded that no authority supported the tolling of conditional release supervision during the 337 days. However, without additional analysis, the court further concluded that no authority “mandate[s] that the 337 days he remained in prison on the shotgun charge while pending release on the assault and battery offense be added to the calculation of a new release date.” Bolden, 865 So.2d at 5. The reference to the contested period as “the 337 days he remained in prison on the shotgun charge” does not appear to be consistent with both parties’ agreement on the fact that Bolden would have been released on April 25, 1999, rather than March 27, 2000, if not for the lengthier incarceration periods of the assault and battery sentences. The first holding — that the DOC and FPC lacked authority to toll Bolden’s conditional release supervision while he continued serving the incarcera-tive portions of his assault and battery sentences — dictates that Bolden’s conditional release supervision arising from the shotgun sentence began on April 25, 1999. But the latter — that the 337 days could not be added to the recalculation of his TRD after release revocation — effectively grants Bolden prison time credit toward his shotgun sentence for the same period. I do not believe that it can be correct to find that Bolden was simultaneously on supervised release from and serving the incar-cerative portion of the same sentence.
If Bolden’s conditional release supervision was not properly tolled but rather began on April 25, 1999, it was error for the First District to also hold the contested 337 days could not be added in the recalculation. On the other hand, if his conditional release supervision was properly tolled, the question that would follow is whether those 337 days should be treated as prison time creditable toward the shotgun sentence or as a period when both the incarcerative portion of his shotgun sentence and his conditional release supervision were tolled.
I conclude that Bolden’s conditional release supervision was properly tolled. Section 947.1405 does not directly address *377 the issue, but its language plainly provides that supervision begins upon release and ends no later than when the offender’s maximum sentence would have ended had conditional release not been granted. As this Court has noted, “Conditional Release (as opposed to Control Release, Provisional Credits, and Administrative Gain Time) is not an early release program. Conditional Release is an extra post-prison probation-type program.” Evans, 737 So.2d at 507. Its purpose is to ensure continued supervision after incarceration of those offenders the Legislature has found to provide the greatest threat to the public safety. See § 947.1405(8), Fla. Stat. (2003). In Evans, this Court relied on those principles for support of tolling:
[T]here is legitimate authority for the proposition that the supervision period should be tolled until release from prison. In State v. Savage, 589 So.2d 1016 (Fla. 5th DCA 1991), for example, the defendant was sentenced to three years to be followed by one year on probation. While serving the sentence, the defendant was convicted of an additional crime and a new, completely separate sentence was imposed. This Court rejected the contention that the one-year probation began at the end of the three-year sentence while the defendant was still in prison, finding that the probation was tolled until release from prison. This Court stated:
Simple logic would seem to dictate that, where a defendant is incarcerated in another jurisdiction, a probationary period from an unrelated sentence would be tolled since a probationary term should not be allowed to expire simply because a defendant has decided to incur new prison time as a result of a separate and distinct offense.
Id. at 1018. While in Savage the two sentences were from different states, we believe that the same principle should apply here. It would be contrary to common sense to have Evans serve his Conditional Release supervision in prison because he is already under a significant restraint there....
In this case, we conclude that if the legislature determined that there was a need for additional post-prison supervision for these more at-risk releasees, requiring that they serve their Conditional Release supervision in prison would not make any sense. Therefore, tolling the supervision until the inmate has been released from prison would be the most logical choice.
Evans, 737 So.2d at 508 (emphasis added). Because this “common sense” approach holds true in the present case, the holding of Evans, that the State may use an unexpired conditional release-eligible sentence to determine the length of the supervision and toll the beginning of the supervision period until physical release also appears applicable to the present case.
Because conditional release is a probation-type program, “the rehabilitative concept of probation which presupposes that the probationer is not in prison confinement” [5] should likewise apply. However, the general rule applying to probation that the supervisory portion of a split sentence should immediately follow the incarcera-tive portion of that sentence, upon which the First District inherently relied below to distinguish the present case from Evans, is inapplicable to conditional release. Conditional release supervision is not a component of a split sentence and indeed is not a sentence at all.
[The conditional release program] simply requires that certain inmates will *378 complete their sentences outside of prison, but still under a degree of supervision. As we recognized in Duncan v. Moore, 754 So.2d 708, 710 (Fla.2000), conditional release is not an increased punishment program at all, but rather an assistance program designed to “help these former inmates in bridging the gap between prison and the outside world.”
Further, conditional release is not a form of sentence, and it is not imposed by a court. Although the statute may impose an undesirable condition upon the release of those subject to the statutory requirements by converting gain time that might be awarded into postre-lease supervision, neither gain time nor conditional release is a true part of a criminal sentence. An inmate’s eligibility for conditional release is established by statute. Inmates who are subject to conditional release are identified and their placement on conditional release is required, not by the sentencing court, but by the Parole Commission.
Mayes v. Moore, 827 So.2d 967, 971 (Fla.2002). Thus, it makes no difference that Bolden’s concurrent sentences were for related crimes. His conditional release supervision arising from the shotgun sentence was properly tolled until his physical release from incarceration so that the purpose and post-prison nature of the program would be preserved.[6]
Having determined Bolden’s conditional release supervision was properly tolled during the contested 337 days, I turn to the question of whether those days should be treated as prison time creditable toward the shotgun sentence or as a period when the incarcerative portion of his shotgun sentence was likewise tolled. Because Bolden’s sentences were concurrent, I conclude the 337 days he remained incarcerated on the assault and battery charges should be treated, upon release revocation, as prison time creditable toward the shotgun sentence as well.[7] Although nothing in the Florida Statutes directly addresses this issue, I find implicit in the nature of “concurrent” sentences[8] that time previ *379 ously served on a concurrent sentence should be credited toward all other concurrent sentences.
CONCLUSION
Because I find Bolden should have bene-fitted from the 337 days of his incarceration on the assault and battery charges through the crediting of prison time toward his shotgun sentence, I would conclude the DOC erred in extending his recalculated TRD for that sentence by those 337 days. Although this is the ultimate conclusion reached in the decision below, I would nonetheless quash that decision to the extent its analysis contradicts the above analysis.
PARIENTE, J., concurs.

. Section 944.275(2)-(3), Florida Statutes (1991), provides that the DOC must calculate for each prisoner a " 'maximum sentence expiration date’ which shall be the date when the sentence or combined sentences imposed on a prisoner will expire,” and a " 'tentative release date' which shall be the date projected for the prisoner's release from custody by virtue of gain-time granted or forfeited.”

. Bolden's TRD for his fourth sentence occurred prior to this date and is irrelevant to this dispute as that sentence was not subject to conditional release.

. Evans v. Singletary, 737 So.2d 505, 507 (Fla.1999).

. For example, this principle underlies section 944.275(c), Florida Statutes (1991), which provides that, when an escaped prisoner or parole violator is returned to custody, the DOC must recalculate and extend the inmate's maximum sentence expiration date by the amount of time the inmate was "not in custody.”

. Porter v. State, 585 So.2d 399, 400 (Fla. 1st DCA 1991).

. While the FPC’s tolling of Bolden’s conditional release supervision was proper, its imposition of two terms of supervision, one for 997 days and a second for 1336 days, appears erroneous. Section 947.1405(6) states "The length of supervision must not exceed the maximum penalty imposed by the court.” Reading this in conjunction with section 944.275(2)(a), Florida Statutes (1991), which provides the DOC "shall establish for each prisoner sentenced to a term of years a 'maximum sentence expiration date,' which shall be the date when the sentence or combined sentences imposed on a prisoner will expire,” I conclude that any conditional release supervision imposed upon Bolden could not run past his maximum sentence expiration date. At the time of Bolden's conditional release, that date fell 997 days later.

. The DOC and FPC argue this conclusion could lead to undesirable results in cases in which the time served between a shorter, conditional-release-eligible sentence and a longer, concurrent sentence is greater than the amount of gain time forfeited and to be served upon revocation. Indeed, in such cases, the offender's return to prison "to serve the sentence imposed upon him” would be an ineffective deterrent to violations of conditional release as the sentence would be entirely fulfilled by the prison credit deriving from the time served on the longer, concurrent sentence. However, I note that the FPC's authority is not limited to the return of the releasee to prison "to serve the sentence imposed.” Section 947.141(3) also provides the FPC may "enter such other order as it considers proper.” Because the extent of this additional grant of authority is not clear and because the effectiveness of the conditional release program in certain circumstances is at stake, I would urge the Legislature to take up this issue in legislation addressing the interaction of concurrent sentences of varying lengths and the conditional release program.

."Concurrent sentences” is defined as "[t]wo or more sentences of jail time to be served simultaneously. For example, if a defendant *379 receives concurrent sentences of 5 years and 15 years, the total amount of jail time is 15 years.” Black’s Law Dictionary 1367 (7th ed.1999).