# Supreme Court of Florida

_____

No. SC12-2669
_____

**ROBERT B. LEFTWICH**,
Petitioner,

vs.

**FLORIDA DEPARTMENT OF CORRECTIONS**,
Respondent.

[September 18, 2014]

LEWIS, J.

Petitioner Robert Leftwich seeks review of the decision of the First District Court of Appeal in Leftwich v. Florida Department of Corrections, 101 So. 3d 404 (Fla. 1st DCA 2012), on the basis that the First District certified that its decision is in conflict with the decision of the Second District Court of Appeal in Downs v. Crosby, 874 So. 2d 648 (Fla. 2d DCA 2004). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.

## FACTS

In 1988, the Florida Legislature enacted the provisional credit statute to reduce overcrowding in the state prison system. See § 944.277(1)(g), Fla. Stat.

(Supp. 1988); see also Gomez v. Singletary, 733 So. 2d 499, 500 (Fla. 1998).

Under the statute, qualified inmates could receive provisional credits applied to their sentence any time the prison population reached a certain threshold. § 944.277(1)(g), Fla. Stat. (Supp. 1988). However, the statute delineated criteria which rendered certain inmates ineligible to receive provisional credits. Id. One factor that would render an inmate ineligible for provisional credits was if the inmate "is sentenced, or has previously been sentenced, under s. 775.084 [the habitual offender statute], or has been sentenced at any time in another jurisdiction as a habitual offender." Id.

On February 10, 1989, Robert Leftwich committed a robbery and an aggravated battery with a weapon. He was sentenced on August 7, 1989, to two years' incarceration for the robbery conviction and ten years' incarceration for the aggravated battery conviction, with the sentences to run consecutively. Neither of these sentences was imposed under the habitual offender statute. However, on August 26, 1989, while incarcerated, Leftwich was found to be in possession of cannabis, and he was later convicted of inmate possession of contraband. Leftwich was sentenced under the habitual offender statute on September 4, 1990, to thirty years' incarceration with a ten-year mandatory minimum. At that time, Leftwich had accumulated 410 days of provisional credits to be applied to his sentences for the robbery and aggravated battery convictions. The Florida Department of

Corrections (DOC) determined that due to the habitual offender sentence, Leftwich was not eligible to receive further awards of provisional credits on the robbery or aggravated battery convictions. As a result, the provisional release date for Leftwich reflects only the 410 days of provisional credits that he acquired prior to his sentence as a habitual offender, and no provisional credits have been awarded since the habitual offender designation.

On February 22, 2011, Leftwich submitted a request to the DOC for an explanation of why he has received only 410 days of provisional credits. Leftwich was of the opinion that he was eligible for 1,080 days of provisional credits for the robbery and aggravated burglary sentences. The DOC responded that an inmate who has been sentenced as a habitual offender is no longer eligible to receive provisional credits on non-habitual offender sentences. After unsuccessfully seeking administrative relief, Leftwich filed a petition for writ of mandamus in the circuit court, which was denied, and then filed a petition for writ of certiorari in the First District. The First District held that after he was determined to be a habitual offender, Leftwich was not eligible to receive provisional credits on any sentence, even those imposed prior to the habitual offender sentence. Leftwich, 101 So. 3d at 404-05. However, the district court certified conflict with Downs, in which the Second District held that under the version of the provisional credit statute in effect from 1988 through 1992, inmates who were eligible to receive provisional credits

- 3 -

on a prior sentence, but who were later sentenced as a habitual offender, could continue to receive provisional credits on their earlier sentence. 874 So. 2d at 650, 652. This review follows.

## Analysis

### Provisional Credit Statute

The provisional credit statute, as enacted in 1988, stated:

(1) Whenever the inmate population of the correctional system reaches 97.5 percent of lawful capacity as defined in s. 944.096, the Secretary of Corrections shall certify to the Governor that such condition exists. When the Governor acknowledges such condition in writing, the secretary may grant up to 60 days of provisional credits equally to each inmate who is earning incentive gain-time, except to an inmate who:

(a) Is serving a sentence which includes a mandatory minimum provision for a capital offense or drug trafficking offense and has not served the number of days equal to the mandatory minimum term less any jail-time credit awarded by the court;

(b) Is serving the mandatory minimum portion of a sentence enhanced under s. 775.087(2);

(c) Is convicted, or has been previously convicted, of committing or attempting to commit sexual battery, incest, or a lewd or indecent assault or act;

(d) Is convicted, or has been previously convicted, of committing or attempting to commit assault, aggravated assault, battery, or aggravated battery, and a sex act was attempted or completed during commission of the offense;

(e) Is convicted, or has been previously convicted, of committing or attempting to commit kidnapping, burglary, or murder,

- 4 -

and the offense was committed with the intent to commit sexual battery;

(f) Is convicted, or has been previously convicted, of committing or attempting to commit false imprisonment upon a child under the age of 13 and, in the course of committing the offense, the inmate committed aggravated child abuse; sexual battery against the child; or a lewd, lascivious, or indecent assault or act upon or in the presence of the child; or

(g) Is sentenced, or has previously been sentenced, under s. 775.084, or has been sentenced at any time in another jurisdiction as a habitual offender.

(2) The secretary's authority to grant provisional credits in increments not exceeding 60 days will continue until the inmate population of the correctional system reaches 97 percent of lawful capacity, at which time the authority granted to the secretary will cease, and the secretary shall notify the Governor in writing of the cessation of such authority.

(3) At such time as provisional credits are granted, the Department of Corrections shall establish a provisional release date for each eligible inmate incarcerated, which will be the tentative release date less any provisional credits granted.

(4) Any eligible inmate who is incarcerated on the effective date of an award of provisional credits shall receive such credits. Any inmate who is under any type of release supervision program of the department is not eligible for an award of provisional credits.

§ 944.277, Fla. Stat. (Supp. 1988) (emphasis added).

The DOC interpreted the statute to render an inmate ineligible to receive further provisional credits on any sentence once that inmate received a habitual offender sentence. See generally Dugger v. Anderson, 593 So. 2d 1134, 1134 (Fla. 1st DCA 1992). In 1992, the First District held that the language "is . . . or has

previously been sentenced" with respect to a sentence imposed pursuant to the Florida habitual offender statute contrasted with the language "at any time" used in reference to a habitual offender sentence imposed by another jurisdiction.  Id. Based on this distinction, the district court concluded that the disqualifying language of the provisional credit statute did not extend to non-habitual offender sentences which were imposed prior to a Florida habitual offender sentence.  Id. at 1135.  Thus, the First District held that a sentence imposed pursuant to the Florida habitual offender statute did not render an inmate ineligible to receive provisional credits for a sentence that was imposed prior to being determined to be a habitual offender.

Shortly after the decision in Anderson, the Legislature amended the provisional credit statute to exclude from eligibility any inmate who "[i]s sentenced, or has previously been sentenced, or has been sentenced at any time under s. 775.084 [the habitual offender statute], or has been sentenced at any time in another jurisdiction as a habitual offender . . . ."  § 944.277(1)(g), Fla. Stat. (Supp. 1992) (emphasis added).  The amendment was enacted as a result of the decision in Anderson.  See, e.g., Mamone v. Dean, 619 So. 2d 36, 36 (Fla. 5th DCA 1993) ("After Anderson (and, indeed, because of it), the Florida Legislature remedied the language of section 944.277(1)(g), Florida Statutes, to show its clear intent that an inmate is precluded from receiving provisional credits once

sentenced as a habitual offender."); see also McBride v. Moore, 780 So. 2d 221, 222 (Fla. 1st DCA 2001) ("As the court explained in Mamone . . . , the legislature actually amended section 944.277(1)(g) as a reaction to the Anderson decision . . . .").

## Ex Post Facto Principles

Leftwich contends that Anderson entitles him to receive provisional credits on the sentences imposed prior to the date he received the habitual offender status, and the denial of provisional credits on these sentences based on the 1992 amendment violates the ex post facto clause. The ex post facto clause is violated by application of a penal law if the application: (1) is retrospective; and (2) disadvantages the offender affected by it. See Waldrup v. Dugger, 562 So. 2d 687, 691 (Fla. 1990). The ex post facto clause applies to gain time statutes, including those for incentive gain time, basic gain time, and overcrowding gain time. See Gomez, 733 So. 2d at 504.

If retroactive application of a statutory amendment results in additional punishment for a defendant, it violates the ex post facto clause. See State v. Smith, 547 So. 2d 613, 616 (Fla. 1989) (superseded by statute). After an amendment has been enacted, judicial interpretations of the prior statute may be relevant to an ex post facto analysis. Id. This Court stated in Smith:

> First, it is a function of the judiciary to declare what the law is. 10
> Fla. Jur. 2d, Constitutional Law, § 166. Although legislative

amendment of a statute may change the law so that prior judicial decisions are no longer controlling, it does not follow that court decisions interpreting a statute are rendered inapplicable by a subsequent amendment to the statute. Instead, the nature and effect of the court decisions and the statutory amendment must be examined to determine what law may be applicable after the amendment. See, 13 Fla. Jur. 2d, Courts and Judges, § 140.

Id. at 616-17 (quoting Heath v. State, 532 So. 2d 9, 10 (Fla. 1st DCA 1988)).

Thus, where a statute is ambiguous at the time a crime is committed, and the Legislature subsequently enacts a clarifying amendment that would result in a longer prison sentence, retroactive application of the clarifying amendment runs afoul of the ex post facto clause. See State v. Miranda, 793 So. 2d 1042, 1044 (Fla. 3d DCA 2001) (holding that a statutory amendment characterized by the State as a clarification could not be applied retroactively because the statute as written at the time of the crime was unclear, and retroactive application of the statute as amended would result in an increased period of incarceration).

At the same time, a statutory amendment may be relevant to a determination of the intent behind the previous statute. See Lowry v. Parole & Prob. Comm'n, 473 So. 2d 1248, 1250 (Fla. 1985). This Court stated in Lowry that if the Legislature amends a statute shortly after a controversy arises with respect to the interpretation of the statute, then the amendment may be considered to be a legislative interpretation of the original statute rather than a substantive change to the statute. Id. at 1250. The defendant in Lowry entered into an agreement with

the Parole and Probation Commission that provided for his release on parole on a specific date. Id. at 1248-49. Shortly before that date, the Attorney General issued an opinion on parole eligibility for prisoners who have received consecutive sentences. Id. at 1249 (citing 1985 Op. Att'y Gen. Fla. 85-11 at 28 (1985)). In the opinion, the Attorney General concluded that an inmate with consecutive sentences is not eligible for parole until he or she has begun to serve the consecutive sentence. Id. As a result, the commission withdrew its agreement with the defendant, and the defendant was not released on the previously agreed upon date. Id. The defendant filed a petition for writ of mandamus seeking to enforce the agreement. Id. During the litigation, legislation was pending that would clarify the manner in which presumptive parole release dates would be calculated for prisoners with consecutive sentences. Id. at 1249-50. Under the amended law, the defendant would be entitled to release. Id. at 1250. The legislation was signed into law two days before this Court rendered the decision in Lowry. Id. This Court examined both the prior legislation and the legislation as amended, and determined that the amended legislation expressed both the prior and continuing legislative intent. Id. Therefore, the Court held that the opinion issued by the Attorney General did not reflect legislative intent and held that the defendant was eligible for consideration for parole. Id. Thus, pursuant to Lowry and Smith, although subsequent legislation cannot be used to overturn prior court decisions

with respect to a statute, the legislation <u>can</u> be used to clarify the intent behind the prior version of the statute.

Furthermore, the United States Supreme Court has held that the federal ex post facto clause generally does not apply to judicial precedent. See <u>Marks v. U.S.</u>, 430 U.S. 188, 191 (1977) ("The <u>Ex Post Facto</u> Clause is a limitation upon the powers of the Legislature . . . and does not of its own force apply to the Judicial Branch of government."). Instead, retroactive application of precedent is governed by the due process clause, which requires that the retroactive application cannot result in an unforeseeable enlargement of the criminal statute. See <u>Bouie v. City of Columbia</u>, 378 U.S. 347, 353 (1964).

This Court applied <u>Marks</u> in <u>Mayes v. Moore</u>, 827 So. 2d 967, 973 (Fla. 2002), where two inmates challenged the retroactive application of <u>State v. Lancaster</u>, 731 So. 2d 1227 (Fla. 1998). In <u>Lancaster</u>, this Court held that a 1988 statute provided the DOC with the authority to cancel provisional credits or other overcrowding gain time acquired by an offender when the offender is returned to DOC custody after a violation of conditional release. 731 So. 2d at 1232-33. The defendants in <u>Mayes</u> contended that because <u>Lancaster</u> was not decided until after their original commitment, cancellation of the overcrowding gain time they accrued prior to their release upon their return to DOC custody for violation of their conditional release would result in an ex post facto violation. <u>Mayes</u>, 827 So.

2d at 973. Based on the decision of the Supreme Court in <u>Marks</u>, the Court looked to whether the decision in <u>Lancaster</u> was an unforeseeable enlargement of the statute and concluded that it was not. <u>Mayes</u>, 827 So. 2d at 973. Significantly, this Court recognized that: (1) the DOC had previously considered administrative gain time to be forfeitable upon supervision revocation; (2) this Court had previously held that provisional credits were essentially the same as administrative gain time; and (3) the statutory authority to revoke overcrowding gain time existed prior to the decision in <u>Lancaster</u>. <u>Id.</u> In light of these facts, this Court held that there was no ex post facto violation in the retroactive application of <u>Lancaster</u> to the defendants. <u>Id.</u> at 974.

**Cases That Have Addressed
Application of the 1992 Amendment**

After the 1992 amendment to the provisional credit statute was enacted, the First and Fifth District Courts of Appeal determined that retroactive application of the amendment would not result in an ex post facto violation. <u>See</u> <u>Mamone</u>, 619 So. 2d at 36; <u>McBride v. Moore</u>, 780 So. 2d 221, 222. In <u>Mamone</u>, the Fifth District stated that the Legislature amended the statute to reflect its clear intent that an inmate who has at any time received a habitual offender sentence was not eligible to receive provisional credits. 619 So. 2d at 36. The district court additionally noted that in <u>Dugger v. Rodrick</u>, 584 So. 2d 2 (Fla. 1991), this Court held that the provisional credit statute did not involve substantive matters of

- 11 -

punishment, but rather was an administrative procedural mechanism enacted to control prison overcrowding. Mamone, 619 So. 2d at 36 (citing Rodrick, 584 So. 2d at 2).

Likewise, in McBride, the First District held that the 1992 amendment was a clarification of the legislative intent behind the earlier version of the statute, and that changes to the statute would not result in an ex post facto violation. McBride, 780 So. 2d at 222. The defendant in McBride was sentenced as a habitual offender while serving a non-habitual offender sentence. Id. He contended that pursuant to the First District's decision in Anderson, he remained eligible to receive provisional credits on the non-habitual offender sentence because the habitual offender sentence was imposed after the non-habitual offender sentence. Id. The First District concluded that Anderson was inapplicable because the 1992 amendment was a legislative clarification of the original intent to exclude inmates sentenced as habitual offenders from eligibility for provisional credits, regardless of when the designation was imposed. Id. In addition, the district court relied on Mamone and Rodrick for the proposition that amendments to the provisional credit statute could not result in an ex post facto violation because the statute was not substantive in nature. Id. at 222-23 (citing Mamone, 619 So. 2d at 36; Rodrick, 584 So. 2d at 2).

However, subsequent to Mamone, but prior to McBride, the United States Supreme Court held that Florida's provisional credit statute was subject to ex post facto analysis. See Lynce v. Mathis, 519 U.S. 433 (1997).[1] In Lynce, the Supreme Court reviewed whether the cancellation of previously awarded provisional credits for certain classes of offenders violated the ex post facto clause of the federal constitution. Id. at 435. The defendant in Lynce pled nolo contendere to a charge of attempted murder and was released from prison early based on his accumulation of various kinds of early release credits, including provisional credits. Id. at 435-36. Shortly after the defendant was released, the Attorney General of Florida issued an opinion that interpreted the 1992 amendment to the provisional credit statute as retroactively cancelling all provisional credits for inmates convicted of attempted murder. Id. at 436, 438-39. The defendant was returned to DOC custody, and he challenged the retroactive cancellation of his provisional credits based on the ex post facto clause. Id. at 436. The State contended that no ex post facto violation occurred because the credits were awarded as part of an

---

1. This Court later recognized that Lynce impliedly overruled the decision in Rodrick. See Winkler v. Moore, 831 So. 2d 63, 65-66 (Fla. 2002) ("In 1997, the United States Supreme Court ruled in Lynce . . . that the State had violated the Ex Post Facto Clause when it retroactively canceled overcrowding gain time because such credits, like regular gain time, were subject to ex post facto analysis. The decision essentially overruled this Court's previous decisions holding that overcrowding gain time was not subject to ex post facto analysis." (citing Blankship v. Dugger, 521 So. 2d 1097 (Fla. 1988); Rodrick, 584 So. 2d at 2; Griffin v. Singletary, 638 So. 2d 500 (Fla. 1994))).

administrative process implemented to reduce prison overcrowding. Id. at 439. However, the Supreme Court stated that the subjective motivation of the Legislature in enacting the statute was not the relevant inquiry for an ex post facto analysis. Id. at 442. Rather, courts must ask whether the new statute disadvantaged the defendant by increasing his or her term of incarceration. Id. Because the amendment to the statute resulted in the defendant spending more time in prison, the Supreme Court held that retroactive application of the 1992 amendment violated the ex post facto clause. Id. at 446-47.

As previously discussed, at the time of the decision in McBride, the Supreme Court had decided Lynce. Therefore, Dugger and Mamone were no longer good law, and the conclusion in McBride that the provisional credit statute was not substantive in nature and an amendment to the statute could not result in an ex post facto violation was error. However, this was not the sole basis for the holding in McBride. The First District concluded the decision as follows:

> In summary, since the 1992 amendment merely clarified the intent of the legislature with regard to section 944.277(1)(g), the trial court correctly ruled that the statute has never distinguished between inmates who had habitual offender sentences, regardless of whether imposed before or after the original sentence. On this basis, we deny the petition for writ of certiorari.

780 So. 2d at 223 (emphasis added). Thus, the determination that the amendment was a clarification of original legislative intent rather than a change in the law was an independent basis for the holding that a subsequent habitual offender

designation rendered an inmate ineligible to receive provisional credits on a non-habitual sentence imposed prior to the habitual offender status being established.

The Second District reached the opposite conclusion in <u>Downs</u>. The defendant in <u>Downs</u> received two sentences for which he was eligible to receive provisional credits, but was subsequently sentenced for an unrelated conviction as a habitual offender. 874 So. 2d at 650. The Second District recognized that in <u>McBride</u>, the First District held that halting future awards of provisional credits on non-habitual offender sentences did not result in an ex post facto violation, but concluded that the First District incorrectly relied upon <u>Mamone</u> because it was no longer good law. <u>Id.</u> at 652. The Second District then examined whether application of the legislative clarification would result in an ex post facto violation, and held that it did. <u>Id.</u> at 650-51. The Second District reached this conclusion on the basis that application of the 1992 amendment would result in a longer period of incarceration for the defendant than that required under the interpretation given to the prior version of the statute by the First District in <u>Anderson</u>. <u>Id.</u> at 650, 652.

**This Case**

The relevant time period for the determination of what rights Leftwich has with respect to provisional credits is the law in place at the time of his offenses, which occurred in 1989. <u>See</u> <u>Winkler v. Moore</u>, 831 So. 2d 63, 66 (Fla. 2002). The relevant question, therefore, is whether the 1989 statute rendered an inmate

ineligible to receive provisional credits on a non-habitual offender sentence where he or she is later sentenced pursuant to the Florida habitual offender statute.

This case presents a question of statutory construction. Questions of statutory interpretation are reviewed de novo. See Se. Floating Docks, Inc. v. Auto-Owners Ins. Co., 82 So. 3d 73, 78 (Fla. 2012). Our purpose in construing a statutory provision is to give effect to legislative intent, which is the polestar that guides a statutory construction analysis. Larimore v. State, 2 So. 3d 101, 106 (Fla. 2008). All statutory provisions must be given their full effect by the courts, and related statutory provisions must be construed in harmony with one another. Id. (quoting Heart of Adoptions, Inc. v. J.A., 963 So. 2d 189, 199 (Fla. 2007)).

The plain language of a statute is the primary method through which legislative intent may be discovered. See Shands Teaching Hosp. & Clinics, Inc. v. Mercury Ins. Co. of Fla., 97 So. 3d 204, 210 (Fla. 2012). When a statute is clear, courts will not resort to rules of statutory construction to determine legislative intent, but rather will give effect to the plain language of the statute. See State v. Burris, 875 So. 2d 408, 410 (Fla. 2004). At the time that Leftwich committed the relevant crimes, the provisional credit statute provided:

> Whenever the inmate population of the correctional system reaches 97.5 percent of lawful capacity . . . the Secretary of Corrections shall certify to the Governor that such condition exists. When the Governor acknowledges such condition in writing, the secretary may grant up to 60 days of provisional credits equally to each inmate who is earning incentive gain-time, except to an inmate

- 16 -

who . . . [i]s sentenced, or has previously been sentenced under s. 775.084, or has been sentenced at any time in another jurisdiction as a habitual offender.

§ 944.277(1)(g), Fla. Stat. (Supp. 1988). The plain language of the statute clearly expresses the legislative intent that all habitual offenders be precluded from acquiring provisional credits for any sentence.

Under the plain language of the statute, the authority to award provisional credits occurred only when the inmate population reached 97.5 percent of lawful capacity, at which time provisional credits could be awarded to eligible inmates. Id. Whether an inmate was eligible was subject to change over the course of each inmate's sentence. For example, subsection (1)(b) provided that an inmate was ineligible to receive provisional credits if he or she "[i]s serving the mandatory minimum portion of a sentence enhanced under s. 775.087(2)[.]" § 944.277(1)(b), Fla. Stat. In other words, an inmate was ineligible while serving the mandatory minimum portion of a sentence, but would become eligible once the mandatory portion was completed. Thus, a determination of eligibility must be made at the time of the overcrowding, and eligibility may change during the course of a sentence. Should the inmate fall into any of the categories not authorized to receive provisional credits at the time of the eligibility determination, then he or she could not be awarded provisional credits during that certification period. Accordingly, the plain language of the statute directs that if an inmate is currently

- 17 -

or has previously been sentenced as a habitual offender at the time the eligibility determination is made, he or she may not receive provisional credits. Thus, the intent of the Legislature was indubitably to prevent the early release of habitual offenders under the provisional credit system.

Moreover, any other interpretation of the statute would lead to an unreasonable result. See Burris, 875 So. 2d at 410 ("[T]he statute's plain and ordinary meaning must control, unless this leads to an unreasonable result or a result clearly contrary to legislative intent."). The interpretation given to the statute by the First District in Anderson—that an inmate sentenced as a habitual offender in Florida was eligible to receive provisional credits on an earlier non-habitual offender sentence, whereas an inmate sentenced as a habitual offender by another jurisdiction was not—is simply not reasonable. There is no less danger posed by the early release of an inmate sentenced under the Florida habitual offender statute than one sentenced under the habitual offender statute of another jurisdiction.

Additionally, the 1992 amendment demonstrates that the legislative intent behind the exclusion of habitual offenders from eligibility for provisional credits was to prevent all habitual offenders from earning credits toward early release, regardless of when the habitual offender status was established. This amendment excluded from provisional credit eligibility any inmate who "[i]s sentenced, or has

- 18 -

previously been sentenced, or has been sentenced at any time under [the habitual offender statute], or has been sentenced at any time in another jurisdiction as a habitual offender[.]" § 944.277(1)(g), Fla. Stat. (Supp. 1992). Because this amendment was enacted in reaction to the interpretation expressed in Anderson, it is probative of the prior and continuing legislative intent with regard to the eligibility of inmates for provisional credits. See Lowry, 473 So. 2d at 1250. Thus, not only was Anderson a misreading of the plain language of the statute, the 1992 amendment demonstrates that it did not properly reflect legislative intent.

Because we determine that the plain language of the statute in place at the time Leftwich committed his crimes precluded him from future awards of provisional credits on any sentence upon the entry of a habitual offender sentence, and do not apply the 1992 amendment, the ex post facto clause is not implicated. See Marks, 430 U.S. at 191-92 (stating that the ex post facto clause limits the legislative and not the judicial branch, but the due process clause applies to protect against a judicial violation of the right to fair warning of what conduct will give rise to a criminal penalty). Further, we conclude that our interpretation of the statute to prohibit the award of provisional credits to any inmate who is later sentenced as a habitual offender does not constitute an unforeseeable enlargement of the statute. Rather, this interpretation gives effect to the plain meaning of the

statute as written at the time that Leftwich committed his crimes and is consistent with legislative intent at the time the statute was enacted.

## CONCLUSION

Based on the foregoing, we hold that section 944.277, Florida Statutes (Supp. 1988), renders an inmate ineligible to receive provisional credits on any sentence after the inmate has received a habitual offender sentence, even where the habitual offender sentence is imposed subsequent to a sentence that is otherwise eligible for provisional credits. Accordingly, we approve the decision of the First District in Leftwich and disapprove Downs.

It is so ordered.

LABARGA, C.J., and CANADY, POLSTON, and PERRY, JJ., concur.
QUINCE, J., dissents with an opinion, in which PARIENTE, J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

QUINCE, J., dissenting.

Because I do not conclude that the plain language of the statute in place at the time Leftwich committed his crimes precluded him from future awards of provisional credits, I respectfully dissent from the majority's decision.

The plain language of section 944.277(1)(g), Florida Statutes (Supp. 1988) does not clearly express that all habitual offenders are precluded from acquiring provisional credits because it differentiates between inmates who are sentenced as

- 20 -

habitual offenders in another jurisdiction and inmates who receive habitual offender sentences in Florida. We have held that the "legislative use of different terms in different portions of the same statute is strong evidence that different meanings were intended." State v. Marks, 698 So. 2d 533, 540-41 (Fla. 1997) (quoting Dep't of Prof'l Regulation v. Durrani, 455 So. 2d 515, 518 (Fla. 1st DCA 1984)). The language "[i]s sentenced, or has previously been sentenced" for inmates sentenced under the Florida habitual offender statute, compared to "or has been sentenced at any time in another jurisdiction" can be reasonably interpreted to create a narrow category of habitual offenders sentenced in Florida who may still earn provisional credits.

In addition, we should not imply language in the 1988 statute to conclude that Leftwich is precluded from being awarded provisional credits. The statute specifically uses the language "is sentenced, or has previously been sentenced" when referring to inmates sentenced in Florida and the language "or has been sentenced at any time" when referring to those sentenced in other jurisdictions. Therefore, we should not imply that "or has been sentenced at any time" applies to those inmates sentenced in Florida in order to conclude all habitual offenders are precluded from receiving credits. See State v. Hearns, 961 So. 2d 211, 219 (Fla. 2007) ("Under the canon of statutory construction expressio unius est exclusio alterius, the mention of one thing implies the exclusion of another.").

- 21 -

Furthermore, the 1992 amendment is more than a mere clarification of the legislature's original intent. Chapter 92-310, Laws of Florida, which amended section 944.277, included the following language in its preamble: "944.277, F.S.; expanding exceptions to eligibility for grants of provisional credits . . ." Ch. 92-310, Laws of Fla. (emphasis added). This language supports the conclusion that the amendment expanded the exception to all habitual offenders, eliminating the narrow category of habitual offenders, which included Leftwich, who earned provisional credits under the statute. See Holly v. Auld, 450 So. 2d 217, 219 (Fla. 1984) ("The preamble and language of [an] enactment readily reveal the legislature's intent and its policy reasons.").

This expansion of the exceptions contained in the original statute results in the 1992 amendment being applied retroactively to Leftwich, deeming him ineligible for the provisional credits. An amendment to a statute should not be applied retroactively if it would result in additional punishment for the defendant, thereby violating the ex post facto clause of the Florida Constitution. State v. Smith, 547 So. 2d 613, 616 (Fla. 1989); see also State v. Miranda, 793 So. 2d 1042, 1044 (Fla. 3d DCA 2001). By precluding Leftwich from receiving the 670 days of provisional credit he alleged to have earned, the retroactive application of the amendment results in a longer incarceration and violates the ex post facto

- 22 -

clause.  Therefore, the statute in place at the time of his offense, the original version of section 944.277(1)(g), must be applied.

Due to the language in the 1988 statute being "susceptible of differing constructions," one creating a narrow category of habitual offenders to earn provisional credits and one which categorically precludes all habitual offenders from earning provisional credits, the rule of lenity requires this Court to construe the 1988 statute most favorably to Leftwich.  § 775.021(1), Fla. Stat. (1989).  Since the statute must be construed to allow a narrow category of habitual offenders to earn provisional credits, Leftwich was eligible to receive future awards of provisional credit on any sentence prior to the entry of his habitual offender sentence.

I would therefore quash the decision of the First District below and approve the decision of the Second District in Downs v. Crosby, 874 So. 2d 648 (Fla. 2d DCA 2004).

PARIENTE, J., concurs.

Application for Review of the Decision of the District Court of Appeal - Direct Conflict of Decisions

First District - Case No. 1D12-1739

(Leon County)

Lindsay Morgen Saxe and Steven Douglas Knox of Quarles & Brady LLP, Tampa, Florida,

for Petitioner

Jennifer Alani Parker, General Counsel, and Barbara Debelius-Enemark, Assistant General Counsel, Florida Department of Corrections, Tallahassee, Florida,

for Respondent