DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

THE KIDWELL GROUP, LLC, d/b/a Air Quality Assessors
of Florida, a/a/o Robert and Maureen Mucciaccio,

Appellant,

v.

AMERICAN INTEGRITY INSURANCE COMPANY OF FLORIDA,

Appellee.

No. 2D21-205

_____

September 16, 2022

Appeal from the County Court for Charlotte County; John L. Burns,
Judge.

Chad A. Barr of Chad Barr Law, Altamonte Springs, for Appellant.

Kimberly J. Fernandes of Kelley Kronenberg, Tallahassee, for
Appellee.

LaROSE, Judge.

The Kidwell Group, LLC, d/b/a Air Quality Assessors of

Florida, a/a/o Robert and Maureen Mucciaccio (Air Quality),

appeals a final order dismissing, with prejudice, its breach-of-

contract complaint against American Integrity Insurance Company

of Florida (AIIC).  The trial court concluded that the assignment of benefits (AOB) that Air Quality obtained from the Mucciaccios was invalid and unenforceable under section 627.7152(2)(a), Florida Statutes (2019).  We have jurisdiction.  *See* Fla. R. App. P. 9.030(b)(1)(A).

Air Quality raises two issues on appeal.[1]  First, whether a factual dispute precluded the trial court from determining that section 627.7152 governed the type of services Air Quality provided under the AOB.  Second, whether section 627.7152 retroactively applied to this case.  We affirm.

## I.  **Background**

AIIC insured the Mucciaccios' home.  The home sustained hurricane damage in 2017.  In 2019, the Mucciaccios assigned postloss benefits in an AOB to Air Quality in exchange for certain services.  Air Quality would

---

[1] As Air Quality stated during oral argument, it presented similar arguments to the Fifth District.  *See* 21-1000 Oral Argument at 14:33-17:15, *Kidwell Grp., LLC. v. Am. Integrity Ins. Co. of Fla.*, 339 So. 3d 1068 (Fla. 5th DCA 2022) (No. 5D21-1000), https://www.youtube.com/watch?v=3q_Wv0PiKZQ.  The Fifth District, in a rather sparse opinion that we discuss below, agreed with Air Quality and reversed.  *Am. Integrity Ins. Co. of Fla.*, 339 So. 3d at 1069-70.

perform a non-emergency indoor environmental assessment and/or forensic engineering study . . . . to determine repairability, scope and/or categorization of water damage, testing for contamination including bacteria and/or mold in order to prepare a forensic engineering report and/or remediation protocol report that may be used to prescribe or confirm proper remediation procedures for the damaged property.

The AOB provided that "this non-emergency indoor environmental assessment in no way is meant to protect, repair, restore, or replace damaged property or to mitigate against further damage to the property."

After providing the services, Air Quality submitted its invoices to AIIC. AIIC refused to pay; Air Quality sued. Air Quality alleged in its complaint that the homeowners "suffered a loss due to water and/or mold, covered perils under the [AIIC] Policy," and Air Quality agreed to provide "reasonable and necessary assessment services to the [homeowners] relating to the loss" in exchange for the assignment of postloss insurance benefits. Air Quality attached the AOB to the complaint. It did not provide the insurance policy.

AIIC moved to dismiss Air Quality's complaint. AIIC argued that Air Quality lacked standing to sue because the language in the complaint and the AOB led to the "undisputed conclusion" that the

3

AOB was an "assignment agreement" subject to section 627.7152. Specifically, AIIC observed that (i) the AOB did not include the required provisions under section 627.7152(2)(a),[2] and (ii) Air Quality failed to comply with the presuit notice requirement of section 627.7152(9)(a).[3]

_____

[2] The pertinent parts of section 627.7152(2)(a) require that the AOB contain: "a provision that allows the assignor to rescind the assignment agreement without a penalty or fee"; "a provision requiring the assignee to provide a copy of the executed assignment agreement to the insurer within 3 business days after the date on which the assignment agreement is executed or the date on which work begins, whichever is earlier"; "a written, itemized, per-unit cost estimate of the services to be performed by the assignee"; a "notice in 18-point uppercase and boldfaced type" regarding the rights the assignor is giving up to a third party and the assignor's right to cancel the assignment agreement; and "a provision requiring the assignee to indemnify and hold harmless the assignor from all liabilities, damages, losses, and costs, including, but not limited to, attorney fees, should the policy subject to the assignment agreement prohibit, in whole or in part, the assignment of benefits." § 627.7152(2)(a)2-4, 6-7.

[3] Section 627.7152(9)(a) provides:

An assignee must provide the named insured, insurer, and the assignor, if not the named insured, with a written notice of intent to initiate litigation before filing suit under the policy. Such notice must be served by certified mail, return receipt requested, or electronic delivery at least 10 business days before filing suit, but may not be served before the insurer has made a determination of coverage under s. 627.70131. The notice must specify the damages in dispute, the amount

Air Quality countered that the AOB was not an "assignment agreement." Although "the [assessment] report is certainly used in furtherance of repairs or replacements to a property," Air Quality maintained that "it does not actually fall within any of the enumerated service types within [section] 627.7152" because the report "does not specifically protect, repair, restore, or replace property or . . . mitigate against further damage to the property." Air Quality also argued that section 627.7152 could not apply to an AOB relating to an insurance policy in effect before enactment of the statute.

The trial court agreed with AIIC and dismissed the complaint. It concluded that the AOB was an "assignment agreement" that did not comply with section 627.7152(2)(a). It also noted that section

---

claimed, and a presuit settlement demand. Concurrent with the notice, and as a precondition to filing suit, the assignee must provide the named insured, insurer, and the assignor, if not the named insured, a detailed written invoice or estimate of services, including itemized information on equipment, materials, and supplies; the number of labor hours; and, in the case of work performed, proof that the work has been performed in accordance with accepted industry standards.

627.7152 applied because the AOB "was executed after the enactment of the statute."

## II.  Discussion

### A.  Types of Services

Air Quality argues that the complaint did not demonstrate that its services were governed by section 627.7152.  The crux of its argument is that there was no basis for the trial court to determine that Air Quality provided any service to "protect, repair, restore, or replace property or to mitigate against further damage to the property."

AIIC, for its part, emphasizes that Air Quality conceded in the trial court that its assessment report is "certainly used in furtherance of repairs or replacements to a property."  AIIC further asserts that, "regardless of what labels Air Quality applie[d] to its contract," the services were of the type enumerated in the statute.

We review the trial court's dismissal of a complaint for failure to state a claim de novo.  *See Payas v. Adventist Health Sys./Sunbelt, Inc.*, 238 So. 3d 887, 890 (Fla. 2d DCA 2018).  We review questions of statutory interpretation de novo, as well.  *McCloud v. State*, 260 So. 3d 911, 914 (Fla. 2018).

6

In ruling on a motion to dismiss, the trial court is limited to the four corners of the complaint and its incorporated attachments; "all factual allegations . . . [are] taken as true and all reasonable inferences . . . drawn in the appellant's favor." *Payas*, 238 So. 3d at 890 (first citing *Wallace v. Dean*, 3 So. 3d 1035, 1042-43 (Fla. 2009); and then citing *Toney v. C. Courtney*, 191 So. 3d 505, 507 (Fla. 1st DCA 2016)); *Fla. Carry, Inc. v. Univ. of Fla.*, 180 So. 3d 137, 148 (Fla. 1st DCA 2015). A motion to dismiss is "designed to test the legal sufficiency of a complaint to state a cause of action, not to determine issues of ultimate fact." *Howard v. Greenwich Ins. Co.*, 307 So. 3d 844, 849-50 (Fla. 3d DCA 2020) (quoting *Behnam v. Zadeh*, 132 So. 3d 951, 952 (Fla. 1st DCA 2014)). Additionally, "[a]ffirmative defenses 'cannot ordinarily be raised by motion to dismiss' unless 'the face of the complaint is sufficient to demonstrate the existence of the defense.' " *Wallisville Corp. v. McGuinness*, 154 So. 3d 501, 504 (Fla. 4th DCA 2015) (quoting *Ramos v. Mast*, 789 So. 2d 1226, 1227 (Fla. 4th DCA 2001)).

The "complaint must allege 'a short and plain statement of the ultimate facts showing that the pleader is entitled to relief.' " *Payas*, 238 So. 3d at 890 (quoting Fla. R. Civ. P. 1.110(b)(2)). In

7

this case, Air Quality needed a valid AOB to maintain a breach-of-contract cause of action. *See Gables Ins. Recovery, Inc. v. Citizens Prop. Ins. Corp.*, 261 So. 3d 613, 627 (Fla. 3d DCA 2018) ("Matusow did not validly assign her claim, and without the assignment, Gables Recovery did not have standing to sue Citizens."); *see also SFR Servs., LLC v. Indian Harbor Ins. Co.*, 529 F. Supp. 3d 1285, 1298 (M.D. Fla. 2021) (explaining that "the issue of whether the AOB is valid is a merits question of contractual standing" that raises the issue of whether the plaintiff states a claim for relief).

The legislature enacted section 627.7152 in May 2019 "to regulate assignment agreements that seek to transfer insurance benefits from the policyholder to a third party." *Total Care Restoration, LLC v. Citizens Prop. Ins. Corp.*, 337 So. 3d 74, 75-76 (Fla. 4th DCA 2022); *see also* ch. 2019-57, §§ 1-6, Laws of Fla. "An assignment agreement that does not comply with [subsection (2)] is invalid and unenforceable." § 627.7152(2)(d).

> An "assignment agreement" is
>
> any instrument by which post-loss [sic] benefits under a residential property insurance policy or commercial property insurance policy, as that term is defined in [section] 627.0625(1), are assigned or transferred, or acquired in any manner, in whole or in part, to or from a

person *providing services to protect, repair, restore, or replace property or to mitigate against further damage to the property.*[4]

§ 627.7152(1)(b) (emphasis added).  The legislature excluded some types of assignments that are not applicable here.  *See* § 627.7152(11) ("This section does not apply to: (a) An assignment, transfer, or conveyance granted to a subsequent purchaser of the property with an insurable interest in the property following a loss; (b) A power of attorney under chapter 709 that grants to a management company, family member, guardian, or similarly situated person of an insured the authority to act on behalf of an

---

[4] During the pendency of this appeal, the legislature amended the term "assignment agreement" to instruments that pertain to "services, including, but not limited to, inspecting, protecting, repairing, restoring, or replacing the property or mitigating against further damage to the property.  The term does not include fees collected by a public adjuster as defined in s. 626.854(1)."  Ch. 2022-268, § 18, Laws. of Fla. (2022).

The amendment took effect on May 26, 2022.  *Id.* at § 23.  It does not alter our disposition regarding the 2019 version of the statute.  *Cf. Dean Wish, LLC v. Lee County*, 326 So. 3d 840, 850 (Fla. 2d DCA 2021) (explaining that although "[c]ourts may look to a statutory amendment as clarification of the legislature's 'intent behind the prior version of the statute,' " this court did not need to "look at the 2021 amendment to discern a prior legislative intent" where "the Act's language before us [was] clear" (quoting *Leftwich v. Fla. Dep't of Corr.*, 148 So. 3d 79, 83-84 (Fla. 2014))), *review denied*, No. SC21-1529, 2022 WL 852956 (Fla. Mar. 23, 2022).

insured as it relates to a property insurance claim; or (c) Liability coverage under a property insurance policy.").

Air Quality's AOB disclaimed that the assessment services were "meant to protect, repair, restore, or replace damaged property or to mitigate against further damage to the property." But, upon closer examination, we see that the AOB described the purpose of the assessment "to determine repairability, scope and/or categorization of water damage, testing for contamination including bacteria and/or mold in order to prepare a forensic engineering report and/or remediation protocol report that may be used to prescribe or confirm proper remediation procedures for the damaged property." Further, Air Quality alleged in its complaint that it agreed to provide "reasonable and necessary assessment services" relating to the damage.

We are hard-pressed to conclude that Air Quality's assessment was not a service that falls within the scope of an "assignment agreement." As AIIC observes, "[i]f it looks like a duck, and quacks like a duck, then it is a duck." *See generally Villamorey, S.A. v. BDT Invs., Inc.*, 245 So. 3d 909, 911 (Fla. 3d DCA 2018) ("This well-known abductive reasoning test posits: 'If it looks like a duck, and

10

quacks like a duck, then it is a duck.' ").  The AOB is an "assignment agreement" under section 627.7152, regardless of Air Quality's attempts to disguise it as something else.

Notably, the legislature did not exclude *assessment* services from its definition of "assignment agreement" or add such services to subsection (11)'s exclusion list.  *See* § 627.7152(1)(b), (11).  And, of course, "[i]t is not our role to act as the [l]egislature or to add words to the statute which do not exist."  *State v. Estime*, 259 So. 3d 884, 889 (Fla. 4th DCA 2018).

Accordingly, the allegations of the complaint and the AOB are clear; Air Quality agreed to provide services as part of the homeowners' efforts to remediate property damage.  *Cf. Wallisville Corp.*, 154 So. 3d at 504 (holding the trial court erroneously dismissed the complaint as barred by the statute where, "given the complaint's minimal factual allegations regarding the deposit, the trial court did not have enough information to decide the merits of appellees' affirmative defense").

## B.  Retroactivity

Air Quality stresses that the legislature enacted the statute *after* the insurance policy issued to the Mucciaccios.  According to

11

Air Quality, the statute was substantive or "accomplishe[d] a remedial purpose by creating new substantive rights or imposing new legal burdens." AIIC counters that the trial court did not apply the statute retroactively because the statute affects AOBs executed after the statute's effective date.

We review whether a statute applies retroactively or prospectively de novo. *Love v. State*, 286 So. 3d 177, 183 (Fla. 2019). A trial court applies a statute prospectively, not retroactively, to a contract where the statute preexisted the contract. *Total Care Restoration, LLC*, 337 So. 3d at 76.

The statute applies to AOBs "executed on or after July 1, 2019." § 627.7152(13); ch. 2019-57, §§ 1, 6, Laws of Fla. As Judge Badalamenti recently explained, subsection (2) "affect[s] rights under the [AOB], not substantive rights under the insurance policy." *SFR Servs., LLC*, 529 F. Supp. 3d at 1290. The statute provides procedural requirements for an AOB to be valid and enforceable. § 627.7152(2). In the legislature's view, the requirements address legitimate concerns of insureds and insurers. *Cf. SFR Servs., LLC*, 529 F. Supp. 3d at 1295 n.9 (recognizing the legislature may have "had the interests of both insureds and

12

insurers in mind" when it passed section 627.7152 as policy arguments for both the insureds and insurers "were before the Florida Legislature in its consideration of the Act"); Fla. H.R. Comm. on Judiciary, CS/CS/HB 7065 (2019) Final Staff Analysis 1, 13 (May 28, 2019), *available at* https://www.myfloridahouse.gov/ Sections/Documents/loaddoc.aspx?FileName=h7065z1.CJS.DOCX &DocumentType=Analysis&BillNumber=7065&Session=2019 (stating that the statute "addresses the abuse of post-loss [sic] AOBs for property insurance claims" where the Office of Insurance Regulation's report of increased litigation "related to AOBs for property insurance claims, project[ed] recurring significant annual rate increases due to costs associated with such litigation, and predict[ed that] insurers may discontinue writing certain business within certain areas of the state if the trends continue"; and that "[t]he bill may have a positive direct economic impact on the private sector by reducing litigation costs for insurers and lowering insurance rates for consumers").

It seems beyond cavil that an assignee acquires no rights to an insured claim until it executes a valid AOB. *See Total Care Restoration, LLC*, 337 So. 3d at 76 ("Total Care acquired no interest

in the claim until the assignment was executed. It is only when the assignment was executed that Total Care stood in the shoes of the assignor, 'able to maintain suit in its own name as the real party in interest.' " (quoting *QBE Specialty Ins. v. United Reconstruction Grp., Inc.*, 325 So. 3d 57, 60 (Fla. 4th DCA 2021))); *QBE Specialty Ins.*, 325 So. 3d at 60 ("[A] third-party's ability to bring suit against an insurance company is predicated on it having received a valid assignment of benefits from the insured.").

Accordingly, the law in effect at the time the parties executed the AOB controls. *See Total Care Restoration, LLC*, 337 So. 3d at 76-77 (focusing on the AOB's date); *SFR Servs., LLC*, 529 F. Supp. 3d at 1290 (focusing on the AOB's date because "subsection 2, unlike subsection 10, imposes procedural requirements for [AOBs] to be valid and enforceable," and affect only the rights under the AOB, not the insurance policy).

Section 627.7152 had been in effect for months when Air Quality acquired the AOB. The language in the AOB reflects Air Quality's awareness of the statute given that it tried to disclaim its application. Thus, the trial court properly applied the preexisting

14

statute; there was no retroactive application.[5]  *See Total Care Restoration, LLC*, 337 So. 3d at 76 ("[T]he statute was not applied retroactively—the trial court applied it to an assignment executed after the effective date of the statute."); *SFR Servs., LLC*, 529 F. Supp. 3d at 1290 ("The AOB here was undisputedly executed *after* the effective date of the Act, and therefore applying the Act to the AOB does not amount to an impermissible retroactive application.").

Air Quality's reliance on *Menendez v. Progressive Express Insurance Co.*, 35 So. 3d 873, 876 (Fla. 2010), is misplaced. *Menendez* is distinguishable.  *See Total Care Restoration, LLC*, 337 So. 3d at 76 (explaining that *Menendez* was inapplicable where it did not involve an AOB and "did not address . . . whether a subsequent contract, the [AOB] under an insurance policy, is subject to the notice requirements of an earlier enacted statute"); *SFR Servs., LLC*, 529 F. Supp. 3d at 1289 (illuminating that "SFR Services's reliance on *Menendez* is misplaced" because, unlike here,

---

[5] We do not determine whether subsection (2) is procedural or substantive for purposes of retroactive application.  *See Total Care Restoration, LLC*, 337 So. 3d at 77 ("Because we hold that section 627.7152(9)(a) was not retroactively applied to the assignment, we do not reach the question of whether the statute is procedural or substantive.").

15

the new pre-suit requirement in *Menendez* "deprived the vested,

substantive rights of the insured and insurer under existing

policies"). We similarly find the federal cases cited by Air Quality

unpersuasive. *See, e.g., CMR Constr. & Roofing, LLC v. Hartford Ins.*

*Co. of the Midwest*, No. 19-CV-81610, 2020 WL 264671, at \*1-2

(S.D. Fla. Jan. 17, 2020) (failing to mention whether the AOB was

executed after the effective date of section 627.7152(10)); *JPJ Cos.,*

*LLC v. Hartford Ins. Co. of the Midwest*, No. 19-CV-81696, 2020 WL

264673, at \*1-2 (S.D. Fla. Jan. 17, 2020) (same); *Procraft Exteriors,*

*Inc v. Metro. Cas. Ins. Co.*, No. 219CV883FTM38MRM, 2020 WL

5943845, at \*2 (M.D. Fla. May 13, 2020) (involving subsection (10),

which the court found impaired a substantive right arising out of

the insurance policy, i.e., attorney's fees).

## C. Sister Cases from the Fifth District

The Fifth District recently ruled for Air Quality in a case

involving similar facts. *Kidwell Grp., LLC. v. Am. Integrity Ins. Co. of*

*Fla.*, 339 So. 3d 1068, 1069-70 (Fla. 5th DCA 2022). The Fifth

District concluded that dismissal was inappropriate because the

underlying insurance policy was not attached to the complaint. *Id.*

Accordingly, the Fifth District faulted the trial court with relying on

16

evidence outside the four corners of the complaint in dismissing the case.  *Id.*

From our vantage point, the Fifth District's opinion offers scant facts and limited legal analysis.  Judge Eisnaugle provides some clue to the court's reasoning, stating in his special concurrence that "while [Air Quality's] report might not be necessary, the trial court could not determine if section 627.7152, Florida Statutes (2019), applies without, at a minimum, the insurance policy."  *Am. Integrity Ins. Co. of Fla.*, 339 So. 3d at 1070 (Eisnaugle, J., concurring specially).  The opinion provides nothing more.

Although Air Quality failed to attach a copy of the insurance policy to the complaint, we are not hindered in our appellate review.  The Fifth District's apparent focus on the underlying insurance contract would be a red herring if applied to this case.  There seems to be no dispute that the property damage suffered by the Mucciaccios is a covered claim; Air Quality alleges as much.  The statute is obviously a legislative effort to regulate those who seek out "assignment agreements" from homeowners who have suffered a covered loss.  *See* § 627.7152.  The statute's procedural

17

requirements are directed at the AOB, not the insurance policy.

*See* § 627.7152(2); *SFR Servs., LLC,* 529 F. Supp. 3d at 1290

("[S]ubsection 2(a)(4) does not affect *whether* benefits under a policy

can be assigned but only *how* that assignment can be

accomplished—in other words, the procedures that need to be

followed.").  Accordingly, our focus must remain on the operative

document that is central to this appeal, the AOB.  Efforts to rely on

a separate contract, the insurance policy, are distractions.

In fact, after its *American Integrity Insurance Co.* opinion, the

Fifth District clarified that "the operative date for purposes of

[section 627.7152] is the date of the [AOB], not the date the

insurance policy was issued."[6]  *Kidwell Grp., LLC v. Olympus Ins.*

*Co.,* 47 Fla. L. Weekly D1571, D1571 (Fla. 5th DCA July 22, 2022).

The Fifth District further explained that the assignee cannot "step[]

---

[6] The Fifth District noted that the statute's legislative history was irrelevant and relied solely on the statute's plain language to determine that "the trial court properly applied section 627.7152 prospectively to the assignment agreement in [its] case."  *Kidwell Grp., LLC v. Olympus Ins. Co.,* 47 Fla. L. Weekly D1571, D1571-72 n.4 (Fla. 5th DCA July 22, 2022).  Although we briefly mentioned above the legislature's view to provide the statute's full context, we recognize and agree that the statute's plain language, alone, is sufficient to reach our disposition here.

into the shoes" of the insured when the statute in effect at the time of the AOB "dictat[ed] otherwise." *Id.* That is the same legal sentiment we apply here. Because Air Quality did not execute a valid AOB under the statute in effect at the time, Air Quality remains a stranger to the insurance policy. *See Olympus Ins. Co.*, 47 Fla. L. Weekly at D1571 (reasoning that "Kidwell never successfully stepped into the shoes of the insured" because it never entered a valid and enforceable AOB); *Total Care Restoration, LLC*, 337 So. 3d at 76; *QBE Specialty Ins.*, 325 So. 3d at 60.

### III. <u>Conclusion</u>

We conclude that the trial court correctly applied section 627.7152(2) to the AOB. *See Olympus Ins. Co.*, 47 Fla. L. Weekly at D1571; *Total Care Restoration, LLC*, 337 So. 3d at 76-77; *SFR Servs., LLC*, 529 F. Supp. 3d at 1290-91. Accordingly, the trial court properly dismissed the case. *See Wallisville Corp.*, 154 So. 3d at 504.

Affirmed.

CASANUEVA and SMITH, JJ., Concur.

———————————————

Opinion subject to revision prior to official publication.

19